**A. O. SMITH CORPORATION et al.,**
Plaintiffs,

v.

**FEDERAL TRADE COMMISSION et al.,**
Defendants.

**INLAND STEEL COMPANY,**
Plaintiff,

v.

**FEDERAL TRADE COMMISSION et al.,**
Defendants.

**NORTHWEST INDUSTRIES, INC.,**
Plaintiff,

v.

**FEDERAL TRADE COMMISSION et al.,**
Defendants.

**OSCAR MAYER & CO., INC.,**
Plaintiff,

v.

**FEDERAL TRADE COMMISSION et al.,**
Defendants.

**MERCK & CO., INC., Plaintiff,**

v.

**FEDERAL TRADE COMMISSION et al.,**
Defendants.

**HOBART CORPORATION, Plaintiff,**

v.

**FEDERAL TRADE COMMISSION et al.,**
Defendants.

**The GOODYEAR TIRE & RUBBER COMPANY, Plaintiff,**

v.

**FEDERAL TRADE COMMISSION et al.,**
Defendants.

**THOMAS J. LIPTON, INC., Plaintiff,**

v.

**FEDERAL TRADE COMMISSION et al.,**
Defendants.

Civ. A. Nos. 75-15, 75-45 to 75-50 and 75-56.

United States District Court,
D. Delaware.

March 18, 1975.

Richard F. Corroon, Charles F. Crompton, Jr., Potter, Anderson & Corroon, Wilmington, Del., Gilbert J. Helwig, Edward T. Tait, Lee A. Rau, John M. Wood, Reed, Smith, Shaw & McClay, Washington, D. C., for plaintiffs A. O. Smith, and others.

Paul P. Welsh, Robert F. Stewart, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for all plaintiffs except A. O. Smith Corporation, and others; Frank P. Cihlar, Charles W. Petty, Mayer, Brown & Platt, Washington, D. C., of counsel, for plaintiffs Inland Steel Co., Northwest Industries, Inc. and Oscar Mayer & Co., Inc.; Philip A. Lacovara, Howell Begle, Hughes, Hubbard & Reed, Washington, D. C., of counsel, for plaintiff Merck & Co., Inc.; John F. McClatchey, Leslie W. Jacobs, Thompson, Hine & Flory, Cleveland, Ohio, of counsel, for plaintiffs Hobart Corp. and The Goodyear Tire & Rubber Co.; David W. St. Clair, Charles H. McAuliffe, Englewood Cliffs, N. J., of counsel, for plaintiff Thomas J. Lipton, Inc.

Ralph Keil, U. S. Atty., Wilmington, Del., Calvin J. Collier, Gerald Harwood, James P. Timony, William A. Cerillo, Warren S. Grimes, Bruce E. Freedman, Federal Trade Commission, Washington, D. C., for defendant Federal Trade Commission.

Ralph Keil, U. S. Atty., Wilmington, Del., for defendant General Accounting Office.

## OPINION AND ORDER

MURRAY M. SCHWARTZ, District Judge.

On February 19, 1975 this Court issued its opinion in A. O. Smith Corporation, et al. v. Federal Trade Commission, et al., Civil Action No. 75-15, wherein it denied defendants' motion to dismiss for lack of jurisdiction and granted plaintiffs' motion for preliminary injunction. That case involves a suit by seven corporations seeking declaratory and injunctive relief against the Federal Trade Commission ("Commission" or "FTC"), its chairman and each commissioner separately, and the Comptroller General of the United States. The suit challenges the validity of an order promulgated by the Commission requiring the plaintiffs there, along with 338 other large corporations, to file annual line-of-business reports ("LB Reports").

Thereafter, an additional seven separate but nearly identical actions were filed by seven other corporations.[1]

This opinion treats two motions arising from the preliminary injunction previously issued in A. O. Smith Corporation, et al. v. Federal Trade Commission, et al.[2] ("Smith" or "A. O. Smith"), plaintiffs'[3] motions for preliminary injunction in seven unconsolidated civil actions all seeking relief identical to that granted in A. O. Smith, and the motion of defendant, Federal Trade Commission, to dismiss, or in the alternative, to trans-

1. At oral argument on March 13, 1975, the Court was advised all but 10 of the 345 corporations ordered to file LB Reports have either filed or are engaged in litigation revolving about the requirement of filing the report. As of March 13, 1975, 220 corporations had filed LB Reports. One hundred two corporations are engaged in pre-enforcement litigation in the Southern District of New York or the District of Delaware, while the FTC was actively pursuing 110 enforcement proceedings in the Southern District of New York.

2. Civil Action No. 75-15 Opinion and Order dated February 19, 1975. The Findings of Fact and Conclusions of Law in A. O. Smith Corporation, et al. v. Federal Trade Commis-

sion, et al. to the extent they are not inconsistent with those in the instant opinion are herein incorporated by reference and made a part hereof and made applicable to all the plaintiffs captioned herein. See D.C., 396 F.Supp. 1108.

3. The respective law suits wherein the FTC and its commissioners are defendants are as follows: Inland Steel Company, Civil Action No. 75-45; Northwest Industries, Inc., Civil Action No. 75-46; Oscar Mayer & Co., Inc., Civil Action No. 75-47; Merck & Co., Inc., Civil Action No. 75-48; Hobart Corporation, Civil Action No. 75-49; The Goodyear Tire & Rubber Company, Civil Action No. 75-50; Thomas J. Lipton, Inc., Civil Action No. 75-56.

fer the seven actions to the Southern District of New York.

The varied motions [4] will be considered separately.

## I. DEFENDANTS' MOTION TO DISMISS DIRECTED TO THE SEVEN ADDITIONAL COMPLAINTS

Defendants have filed motions to dismiss the seven separate but nearly identical actions brought by seven additional corporations against the same defendants as in the *A. O. Smith* case.

### A. Background

These seven plaintiffs are among the 345 corporations subject to the Commission's Line-of-Business order. Most of the background facts pertinent to these actions are identical to those cited in the *A. O. Smith* opinion D.C., 396 F.Supp. 1108 at pp. 1111–1112. In addition, nearly all of the record in that proceeding has been introduced into the record of each of these cases. There are, however, some differences in the facts incident to these plaintiffs which, according to the FTC, require a different outcome than that reached in the *A. O. Smith* opinion.

In *A. O. Smith*, no Commission enforcement proceeding, per 15 U.S.C. § 49, as amended, had been applied for prior to the time suit was filed in this Court. As to the seven new plaintiffs the following facts apply. On February 11, 1975, a district judge of the Southern District of New York signed a show cause order directed to Thomas J. Lipton, Inc. ("Lipton"), among others, concerning compliance with the Commission's order. By its own terms this show cause order was to be served upon Lipton by February 21, 1975.[5] This order, docketed on February 21, 1975,[6] was not served upon Lipton by February 21 and had not been served by February 26, 1975.[7] Lipton filed suit in this district on February 24, 1975.

Six of the seven actions herein involved (Civil Action Nos. 75–45 to 75–50) were filed with this Court on February 14, 1975. On February 20, 1975, Judge Weinfeld issued another order to show cause, at the request of the Commission, to 95 additional companies then due to file reports. By its terms service was to be made by March 4, 1975. This latter order was directed to the other six plaintiffs in these actions. It was filed with the Docket Clerk of the Southern District of New York Court on March 7, 1975.[8] Service had not been perfected as to any of these six plaintiffs by February 26, 1975.

On February 26, 1975 this Court issued a temporary restraining order preventing the Commission from taking any further action toward enforcement of its order, including any service of show cause orders, with respect to the seven plaintiffs involved in these actions. A hearing was held on March 13 on plaintiffs' motion for preliminary injunction. The timing of the issuance of this opinion is controlled by the expiration of the Temporary Restraining Order on March 18, 1975, the parties having been unable to agree to an extension. As a result, the Court has had no opportunity to review a forthcoming transcript of the March 13 hearing.

---

4. Plaintiffs have withdrawn a motion to intervene in the *Smith* litigation following waiver of a venue defense by the FTC. Motions of certain of the additional seven plaintiffs to consolidate and an intervention motion by Thomas J. Lipton, Inc. are in limbo not having been pursued at the March 13, 1975 preliminary injunction hearing. The FTC has also advised it did not wish to pursue its alternative motion to transfer if a preliminary injunction should issue with respect to the seven additional plaintiffs.

5. Civil Action No. 75–56, Docket No. 18, Affidavit of James Timony.

6. Civil Action No. 75–56, Docket No. 13, Affidavit of Laura Allen.

7. Thomas J. Lipton, Inc. v. Federal Trade Commission, et al., Civil Action No. 75–56, Docket No. 15, Affidavit of David W. St. Clair.

8. Civil Action No. 75–48, Docket No. 23, Second Affidavit of James Timony.

## B. Ripeness

Following the order in which the issues were treated in the *A. O. Smith* opinion, the first challenge posed by the defendants to the conclusions reached therein goes to the absence of hardship to these plaintiffs, hence, the lack of ripeness, as that concept is discussed in the *Abbott Labs* trilogy.[9]

First, defendants need not worry that this Court finds hardship here based upon grounds which it could not accept in *A. O. Smith*. Specifically, the risk that data obtained through the LB Program will mislead the public and thereby redound to the detriment of complying corporations is a factor too speculative to be considered here.[10]

Defendants in their brief next examine the hardship of noncompliance and reassert that as to any enforcement proceeding brought by the Commission all claims and defenses asserted in this pre-enforcement action could be asserted in an enforcement action. Assuming the truth of this argument and ignoring the possible unavailability of discovery so as to effectively prevent the assertion of defenses (*see* infra p. 1134), the Court deems it irrelevant to a discussion of hardship for purposes of establishing ripeness. Similarly irrelevant is the fact that, upon receiving a notice of default, plaintiffs could seek a stay of the accrual of penalties.

In measuring ripeness, the Supreme Court in the *Abbott Labs* trilogy said that for pre-enforcement jurisdiction purposes, a Court must evaluate the hardship of compliance and the hardship of non-compliance. If either is minimal at the time of adjudication, the matter will be held not ripe.[11]

The hardship of non-compliance is the risk of criminal and civil sanctions, not the chance that no sanctions will be invoked, that controls. For this reason, the issue of plaintiff's ability to fully assert all his defenses in an enforcement proceeding or the likelihood that plaintiff would prevail on the merits are unimportant considerations in determining ripeness. Thus, defendants' reference to cases such as Reisman v. Caplin [12] and Federal Trade Commission v. Claire Furnace Co.[13] completely misconstrues the important distinction between testing hardship for purposes of ripeness and testing the adequacy of some other remedy for purposes of exercising *vel non* a court's discretionary equitable jurisdiction.[14]

Defendants next promote the argument that plaintiff's burden of compliance will be the same and no greater if and when an enforcement proceeding determines they must submit the LB Report, as it would be if compliance were engaged in voluntarily at this time. The answers to this argument are two-

---

9. Abbott Laboratories, Inc. v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Toilet Goods Association v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); Gardner v. Toilet Goods Association, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed. 2d 704 (1967).

10. *See* opinion in *A. O. Smith*, 396 F.Supp. at 1116.

11. It was suggested by a party at oral argument that the test set forth in *Abbott Laboratories* was a disjunctive test and not a conjunctive test, so that the presence of *either* hardship in sufficient degree would satisfy ripeness. For reasons cited in the text above, this Court is inclined to interpret the language of those cases as setting forth a conjunctive test. Thus, in General Motors v.

Volpe, 321 F.Supp. 1112 (D.Del.1970), aff'd as modified, 457 F.2d 922 (3d Cir. 1972), assuming Chief Judge Wright intended to find in the alternative an absence of hardship sufficient to render that case ripe, his decision can be more easily understood not in terms of the $400,000 penalty that General Motors risked by non-compliance, but by the choice of compliance, the direct costs of which would have been mere postage.

12. 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).

13. 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978 (1927).

14. *See A. O. Smith* Opinion and General Motors v. Volpe, 457 F.2d 922 (3d Cir. 1972).

fold: (1) In determining ripeness for pre-enforcement purposes, the operative considerations are cost of compliance *vis-a-vis* cost of non-compliance at the time of the ripeness determination. Comparing costs of compliance in terms of pre- and post-enforcement time frames is irrelevant; (2) if defendants' argument were accepted, pre-enforcement relief would nearly always be denied, and the Court would be forced to conclude that the *Abbott Laboratories* case was wrongly decided.

■ Some of these plaintiffs have apparently made progress toward completion of a rough first draft of an LB Report to the Commission.[15] However, this Court finds that the burdens of compliance yet remaining as to each plaintiff is sufficiently heavy to satisfy ripeness requirements.

All prior discussion in this section assumes the propriety of applying the tests set forth in the *Abbott Labs* trilogy, a position which defendants supported in *A. O. Smith*.[16] Defendants in this action, however, urge this Court to consider the line of cases commencing with Federal Trade Commission v. Claire Furnace Co.[17] and extending through St. Regis Paper Co. v. United States,[18] Reisman v. Caplin,[19] and Donaldson v. United States.[20] A careful reading of these cases compels a conclusion that ripeness was not treated. As such, these cases are more appropriately discussed in the forthcoming section considering the grounds for granting the requested preliminary relief.

■ The *Abbott Labs* trilogy makes it no easier for plaintiffs to maintain suit for pre-enforcement relief than the above-referenced line of cases upon which defendants now rely. In fact, the *Abbott Labs* trilogy imposes an additional burden upon plaintiffs whenever, as here, they seek what is arguably "pre-enforcement" relief. That burden, which is to show both the absence of a Congressional intent to deny pre-enforcement relief and the ripeness of the controversy before the Court, has been met for the same reasons here as detailed in *A. O. Smith.*

## II. THE SEVEN ADDITIONAL PLAINTIFFS' MOTIONS FOR ISSUANCE OF A PRELIMINARY INJUNCTION

■ The issuance of a preliminary injunction requires, at a minimum, two showings: (1) that the moving party has a reasonable probability of success on the merits; and (2) that it will suffer irreparable injury *pendente lite* if the status quo is not maintained. Delaware River Port Authority v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 919–20 (3d Cir. 1974). In addition, the Court must consider, where relevant, the possibility of harm to third parties which would attend a grant or denial of the injunction as well as the public interest. *Id.* at 920.

In *A. O. Smith*, this Court had occasion to consider each of the foregoing factors as they applied to a factual situation not dissimilar from that now before it. Therein, the Court found that plaintiffs had demonstrated a likelihood of eventual success and irreparable injury, and that the interests of specific third parties as well as those of the public at large would not be disserved if the injunction were to issue. Defendants suggest a different result is compelled in the cases at bar, based upon a re-exami-

15. For a summary of the status of each plaintiff in preparing for compliance with the Commission's order, see various affidavits of corporate officials filed separately in each case.

16. *See* A. O. Smith, et al. v. Federal Trade Commission, et al., Civil Action No. 75–15, Docket No. 22, pp. 134, 137.

17. 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978 (1927).

18. 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961).

19. 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).

20. 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).

nation of the applicable law as well as a change in circumstances between the *A. O. Smith* plaintiffs and those at bar. For the reasons articulated below, the Court must disagree.

**A. Probability of Success on the Merits**

Defendants argue that the Court erred in *A. O. Smith* in suggesting the applicability of APA rulemaking procedures to the adoption of the Line-of-Business Reporting Program. They principally contend that imposition of rulemaking procedures is inconsistent with the provisions of the Federal Reports Act,[21] which require that the Comptroller General review and approve all agency forms soliciting information of the type required by the LB Program. Defendants collaterally assert that the Federal Reports Act invests broad investigatory powers in the FTC and that the rulemaking strictures of the APA constitute an unnecessary encroachment upon those powers.

In NLRB v. Wyman-Gordon Co., 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) Mr. Justice Douglas recounted the purpose underlying the APA's rulemaking requirements:

> The rule-making procedure performs important functions. It gives notice to an entire segment of society of those controls or regimentation that is forthcoming. It gives an opportunity for persons affected to be heard. . . .
>
> . . . Agencies discover that they are not always repositories of ultimate wisdom; they learn from the suggestions of outsiders and often benefit from that advice. See H. Friendly,

The Federal Administrative Agencies 45 (1962).

> This is a healthy process that helps make a society viable. The multiplication of agencies and their growing power make them more and more remote from the people affected by what they do and make more likely the arbitrary exercise of · their powers. Public airing of problems through rule making makes the bureaucracy more responsive to public needs and is an important brake on the growth of absolutism . . . ..

*Id.* at 777–78, 89 S.Ct. at 1436, (Douglas, J., dissenting). *See also* Texaco, Inc. v. Federal Power Comm'n, 412 F.2d 740, 744 (3d Cir. 1969).

The review functions vested in the Comptroller General pursuant to 44 U.S.C. § 3512 (Supp.1975) necessarily fail to fulfill these purposes. The Comptroller General's scope of review is limited; it extends only to an examination of the burdensomeness of producing the information requested and assurance that requested information is not available from another source within the federal government. The provision does not contemplate plenary consideration of all issues of possible importance relating to the desirability of a reporting program or the soundness of the reporting methods utilized nor does it allow solicitation or receipt of comments from interested members of the public.[22] Indeed, the period of time in which the GAO must consider a proposal and report back—45 days—would necessarily obviate any extended evaluation of a proposed reporting program.[23]

---

21. 44 U.S.C. § 3512 (Supp.1973), amending 44 U.S.C. §§ 3501–3511.

22. It is noteworthy that the Federal Reports Act, prior to its amendment in 1973, did indeed vest plenary review authority over agency information gathering programs in the Director of the Bureau of the Budget. This included authority to pass upon the necessity of a program for any proper purpose and to solicit the views of interested members of the public. 44 U.S.C. § 3506 as amended, 44 U.S.C. § 3512 (Supp.1975). A reading of the

legislative history of the 1973 amendment suggests that its purpose was to delimit much of this review authority in that it had become an obstruction to data collection programs proposed by federal regulatory agencies. ·*See* House Conference Rep.No.93–924, 93d Cong., 1st Sess. (1973), 1973 U.S.Code Cong. & Admin.News pp. 2533–2534; 119 Cong.Rec. S13441–47 (1973).

23. Defendants also argue that rulemaking procedures are unnecessary because Congress itself (through appropriations) exercises con-

Defendants' suggestion that imposition of rulemaking procedures encroaches upon the FTC's broad investigatory powers is equally without merit. The Federal Trade Commission Act as well as 44 U.S.C. § 3512 confer far-reaching authority upon the FTC to request and collect information; the power of the courts to pass upon the propriety of such requests is accordingly limited. *See* United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). However, the imposition of the APA's rulemaking requirements does not, nor was it intended to, encroach upon the substantive needs of the federal regulatory agencies. The rulemaking provisions, as well as other provisions of the APA, are merely an outline of minimum essential rights and procedures. *See* House Rep.No.1980, 79th Cong., 2d Sess., 1946 U.S.Code Cong. Service pp. 1204–1205. Of course, these procedures may give rise to some administrative inconvenience, yet Congress envisioned this possibility and provided that the Act should nevertheless be fully operative according to its terms. *Id.* at 1204.

Defendants seek to divine further evidence of a Congressional intent to wholly exempt information-gathering programs from the APA's rulemaking regime in that Congress failed to mention investigations in the rulemaking section of that Act. 5 U.S.C. § 553. Instead, defendants assert that investigational matters were treated separately in 5 U.S.C. § 555(c) ("Ancillary Matters"). Section 553, however, purports only to describe the procedures which must be followed in the implementation of agency rules; it does not define "rule" or "rulemak-

ing," nor does it constitute a catalogue of instances in which rulemaking procedures must be followed.[24] Neither is Section 555 indicative of the Congressional intent defendants suggest. As plaintiffs correctly observe, the ancillary matters described in that section, including investigations, are not a new category of substantive authority to which neither rulemaking nor adjudicatory procedures apply. "Section 6 [5 U.S.C. § 555] prescribes the rights of private parties in a number of miscellaneous respects which may be incidental to rulemaking, adjudication, or the exercise of any other agency authority."[25] The procedural requirements specified in Section 555(c) and (d) do not conflict with those specified in Section 553. The Court cannot hold Congress intended in Section 555 to obviate the applicability of all other procedural provisions of the APA.

For the foregoing reasons, as well as those articulated in the Court's opinion in *A. O. Smith,* the Court affirms its earlier conclusion that the rulemaking procedures specified in the APA tentatively apply to the implementation of the FTC's LB Program. Accordingly, the Court finds that the seven plaintiffs now before it have demonstrated the requisite probability of success on the merits to warrant the issuance of a preliminary injunction.

### B. Irreparable Injury

The seven additional corporate plaintiffs in their seven separate but nearly identical actions challenge the validity of the same FTC order, upon the same legal grounds and seek virtually the same ultimate declaratory and injunctive relief as that sought in *A. O. Smith.* Defend-

---

trol over broad economic investigations which the FTC seeks to implement. However, it is doubtful that Congress is in a position to closely scrutinize and offer constructive comments on all such programs, a result which rulemaking procedures are designed to promote. Moreover, termination of Congressional funding for abortive economics reporting programs is a step which occurs only after the faults of the program become evident.

Ideally, the opportunity for public comment in rulemaking proceedings should highlight the difficulties of such a program at its inception.

24. The definition of "rule" and "rulemaking" together with examples are contained in 5 U.S.C. §§ 551(4) and (5).

25. House Rep.No.1980, 79th Cong., 2d Sess., 1946 U.S.Code Cong.Service p. 1206.

ants urge that the circumstances surrounding these plaintiffs differ from those in the *A. O. Smith* case because the Commission has taken legal steps aimed toward enforcing its Order in the Southern District of New York as against each plaintiff. Plaintiffs challenge whether those proceedings were validly instituted, a point this Court does not address. As to six of the plaintiffs the service of orders to show cause was apparently interrupted by this Court's granting of a TRO. As to the seventh plaintiff, Lipton, the time for service of the order to show cause apparently expired by its own terms prior to the granting of the TRO. Regardless of the present status of these orders, it may be fairly assumed that were the TRO to be lifted enforcement proceedings would very shortly be pending against all seven plaintiffs in the Southern District of New York. The relief here requested would enjoin the Commission from taking further enforcement steps in the Southern District of New York.[26]

Defendants correctly stress that the conclusion concerning the lack of adequate alternative remedy in *A. O. Smith* was predicated upon two grounds: (1) the absence of pending enforcement proceedings; and (2) the inadequacy of such proceedings for purposes of conducting needed discovery so as to be able to fully and adequately assert defenses. The first ground is arguably irrelevant with respect to the plaintiffs now before the Court; at the time the TRO issued, the institution of enforcement proceedings in New York against these

seven corporations was a virtual certainty.[27] The difficulties posed by the second ground, however, are undiminished.

Enforcement by mandamus is an action quite distinguished from the usual civil action.[28] It appears relatively infrequently in the U. S. Code.[29] "Its purpose is to enforce rights already established, rather than to establish or declare the rights of the parties." [30] Because of the summary nature of mandamus proceedings, procedural rights normally associated with plenary civil actions may be curtailed.[31] This is particularly true with respect to the use of discovery devices. *See* United States v. Associated Merchandising Corp., 256 F.Supp. 318 (S.D.N.Y.1966).

■ Defendants correctly point out that the availability of discovery in summary enforcement proceedings is not categorically foreclosed to either party. Rather, the court to which enforcement application is made has discretion to allow as much discovery as is consistent with the need for expeditious adjudication of the issues before it. *See* FTC v. Kujawski, 298 F.Supp. 1288, 1290 (N. D.Ga.1969); *cf.* Venn v. United States, 400 F.2d 207, 212 n. 12 (5th Cir. 1968); United States v. Moriarity, 278 F.Supp. 187 (E.D.Wis.1967). This, however, introduces an element into a court's decision to allow discovery in a summary enforcement context which is not present in a plenary pre-enforcement action, i. e., the "tension between speedy adjudication and fairness to the investigated party." FTC v. Kujawski, 298 F.Supp. at 1290.[32]

---

26. A grant of such relief must always be accompanied by a finding of reasonable probability of success on the merits, an adequate safeguard against a "gutting" of the Commission's procedures for enforcement.

27. Defendants' Memorandum in Support of Their Motion to Dismiss, Civil Action No. 75–46, Docket No. 10 at 6.

28. 52 Am.Jur.2d Mandamus §§ 1–11 (2d ed. 1970).

29. 7 Moore's Federal Practice ¶ 81.01[11] at 81–26 to 81–27 (1974 ed).

30. 52 Am.Jur.2d Mandamus § 4 (2d ed. 1970).

31. *Cf.* Donaldson v. United States, 400 U.S. 517, 528–29 & n. 11, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); United States v. Howard, 360 F.2d 373 (3d Cir. 1966); FTC v. Kujawski, 298 F.Supp. 1288, 1290 (N.D.Ga.1969).

32. Indeed, it appears that this tension is already present; the Commission has made clear its intent to press for limited discovery in the enforcement suits which are now pending against other plaintiffs in the Southern District of New York. *See* Defendants' Mem-

■ In the Court's view, it is this tension which renders plaintiffs' remedy by way of summary enforcement suit inadequate *vis-a-vis* plenary pre-enforcement proceedings. In the context of a summary enforcement suit in which a prompt determination of the need for compliance with an administrative order is demanded, a court may be understandably ill-disposed to grant requests for discovery which would be otherwise permissible in a plenary civil action. *See, e. g.*, United States v. Associated Merchandising Corp., 256 F.Supp. 318 (S.D.N.Y.1966).

■ This is not to say that a pre-enforcement injunction may issue in every instance in which there appears the possibility that discovery in a pending enforcement proceeding may be limited. Where, as here, however, plaintiffs are able to demonstrate a likelihood of success on the merits and may need the panoply of discovery devices envisioned by the Federal Rules if they are

ultimately to carry the burden of persuasion, this Court may invoke its equitable powers[33] to afford the discovery needed.

■ Given the foregoing considerations and in view of plaintiffs' demonstrated need for full discovery on several issues,[34] the Court reiterates that the mandamus proceedings contemplated by the Commission are not an adequate vehicle for the adjudication of rights plaintiffs here assert.[35] Accordingly, for the applicable reasons set forth in *A. O. Smith*, at 1117–1118, and as amplified above, the Court concludes plaintiffs will suffer immediate irreparable injury.

### C. Public Interest

■ In *A. O. Smith*, the Court concluded that the public interest would not be disserved if a preliminary injunction were issued in favor of the seven moving plaintiffs. Defendants here renew this argument contending that de-

orandum in Support of Their Motion to Dismiss, Civil Action No. 75–46, Docket No. 10 at 24–25 and A. O. Smith, et al. v. Federal Trade Commission, et al., Civil Action No. 75–15, Defendants' Memorandum in Support of a Motion for Protective Order at 3–15.

33. It is well-settled that a court of equity may, upon proper application, invoke its auxiliary jurisdiction to provide discovery and concomitant relief where discovery is inadequate at law. In proper cases this may include issuance of a decree enjoining further proceedings at law in favor of removal of the entire case to equity. 1 J. Pomeroy, A Treatise on Equity Jurisprudence § 197a, at 296–97 & n. 17 (1941). *See generally id.* §§ 191–215, at 275–365.

34. *See* Plaintiffs' Memorandum in Support of Their Motion for a Preliminary Injunction at 15–16.

35. Given the holding here, the defendants' reliance on the holdings in Donaldson v. U. S., 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), St. Regis Paper, Co. v. U. S., 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961), and FTC v. Claire Furnace, Inc., 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978 (1927) is misplaced; none of these cases considered the adequacy of discovery in the pending enforcement proceeding, nor does

it appear that plaintiffs in any case had established a likelihood of eventual success on the merits.

It may also be argued that Claire Furnace was decided on alternative grounds, specifically, the existence of a Congressional intent to minimize the judicial burden which such actions placed upon the courts and prospective enforcement defendants through a statutory scheme requiring the Attorney General to screen Commission requests for enforcement relief in the courts. *See* 15 U.S.C. § 49. This statute has recently been amended to permit the Commission to bring its own actions; therefore, the prior implied Congressional concern for burdening the courts and enforcement defendants with suits involving Commission orders has faded with the passage of time. *See* 15 U.S.C.A. § 56(a) (1975).

Finally, language utilized by the Supreme Court in *Claire Furnace* would seem to indicate that the Court envisioned the applicability of all procedural incidents of a plenary proceeding in an enforcement action. *See* 274 U.S. at 174, 47 S.Ct. at 556 ("If, exercising his discretion, [the Attorney General] had instituted either proceeding, the defendant therein would have been fully heard, and could have adequately and effectively presented every ground of objection sought to be presented now."). The law has nonetheless developed in a different manner. *See* discussion *supra*, pp. 1134–1135.

lay in the implementation of the program with respect to the seven new plaintiffs will render useless the efforts of the Commission as well as the corporations having already submitted reports. Defendants additionally argue that issuance of an injunction will impede their efforts to consolidate and resolve all actions relating to the LB Program in a single forum.[36]

For the reasons set forth in *A. O. Smith* and the facts previously alluded to,[37] the Court does not find defendants' first argument persuasive. Defendants' second argument, while possessed of some merit, is more properly the subject of a motion pursuant to 28 U.S.C. § 1404 (a). At this juncture, such a motion is not before the Court.[38]

## III. THE FTC MOTION TO SUSPEND THE PRELIMINARY INJUNCTION ISSUED IN THE *A. O. SMITH* CASE.

 The February 19, 1975 preliminary injunction granted to preserve the status quo was accompanied by an Opinion. In that Opinion the Court found that plaintiffs were entitled to the grant of a preliminary injunction in view of their reasonable probability of success on the merits of Count III of their complaint which alleges that the Commission, in promulgation of the LB Program, has violated the rulemaking provisions of the Administrative Procedure Act (5 U.S.C. § 553). (At 1121–1125) This Court also concluded that plain-

tiffs would suffer immediate, irreparable injury absent the grant of a preliminary injunction (At 1117–1118); that "the possibility of harm to other interested persons from the grant or denial of the injunction is nonexistent or at best speculative" (At 1118); and that it could not be said that the public interest would be harmed by the issuance of an injunction and, indeed, that the public interest may benefit from the grant of a preliminary injunction (At 1118–1119).[39]

On February 26, 1975, the FTC appealed the grant of the preliminary injunction as well as this Court's denial of its Motion to Dismiss. On March 3, 1975 it filed pursuant to Fed.R.Civ.P. 62(c) [40] its motions seeking a suspension of the injunction and stay of all proceedings pending appeal. The FTC has not placed in the record any additional facts bearing upon the merits of the *A. O. Smith* case. Instead it argues the Court erred in its findings of pre-enforcement jurisdiction because of the emphasis placed upon the *Abbott Labs* trilogy.[41] The Commission urges "[t]he Supreme Court has consistently declined to permit preenforcement review of investigational orders or subpoenas issued by administrative agencies where persons seeking the review are assured a proper hearing of any good faith defenses in an enforcement proceeding, and, absent the initiation of the enforcement proceeding, the agency is without power to compel compliance with the order or subpoena.

---

36. Defendants do not argue that the rights of any specific third parties will be impaired by the issuance of the requested injunction. *See* Delaware River Port Authority v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 920 (3d Cir. 1974).

37. *See* note 1, *supra.*

38. Defendants requested withdrawal of pending transfer motions in each of the seven actions in the event the Court granted the respective plaintiffs' motions for preliminary injunction.

39. Civil Action No. 75–15, Plaintiff's Memorandum of Points and Authorities, Docket No. 37.

40. (c) *Injunction Pending Appeal.* When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party. . . .

41. Abbott Laboratories v. Gardner, *supra;* Toilet Goods Association v. Gardner, *supra;* Gardner v. Toilet Goods Association, *supra.*

Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970); Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); St. Regis Paper Co. v. United States, 368 U.S. 208, 225–227, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961); Federal Trade Commission v. Claire Furnace Co., 274 U.S. 160, 174, 47 S.Ct. 553, 71 L.Ed. 978 (1927)." It is noted that at oral argument on the hearing for preliminary injunction in *A. O. Smith*, counsel for the FTC asserted that the *Abbott Labs* trilogy controlled,[42] only briefly mentioning some of the other cases upon which the FTC now presses this Court to consider and rely. The Court, in any event, declines to reach the result urged by the Commission, for reasons set out *supra* at 1131, 1135 & note 34.

The FTC also urges this Court erred in its finding of likelihood of success based upon the admitted failure of the FTC to follow the APA. The Court disagrees for reasons more fully set forth *supra* at 1131–1132.

In summary, the Court reaffirms its views expressed on February 19, 1975; the *A. O. Smith* plaintiffs and the seven additional plaintiffs have a sufficient probability of success on the merits of Count III of their complaint to warrant the grant of a preliminary injunction; the plaintiffs would be irreparably injured absent the grant of a preliminary injunction; the possibility of harm to other interested persons is "nonexistent or at best speculative"; and the public interest will not be harmed by the grant of a preliminary injunction.[43]

If the FTC were to be granted a suspension of the preliminary injunction pending appeal, it candidly conceded at oral argument it would initiate a summary enforcement proceeding against all plaintiffs. That action would disrupt the status quo pending appeal thereby permitting, *inter alia*, the irreparable injury the preliminary injunction was designed to prevent. *See* 7 Moore's Federal Practice ¶ 62.05, at 62–25 to 62–26 (1974). This result cannot be permitted. The FTC's motion for suspension of the preliminary injunction will be denied.

## IV. DEFENDANTS' MOTION TO STAY ALL PROCEEDINGS PENDING APPEAL[44]

The Commission urges this Court to stay all proceedings pending appeal in the *A. O. Smith* case and in the seven new cases, assuming this Court denies its motion to dismiss and grants plaintiffs' motion for preliminary injunction in each of the seven additional cases. The Commission states it intends to appeal from both decisions,[45] and thus seek review of this Court's jurisdiction over these proceedings. In view of the appeals, the Commission urges it would be an appropriate exercise of this Court's discretion to await a decision by the Court of Appeals in *A. O. Smith* and, assumedly, the seven additional cases, before permitting further proceedings in any of them.

Apparently there is no dispute that the nature of defendants' appeal is interlocutory and that this Court retains jurisdiction and responsibility over all those phases of the case which have not been decided.[46]

[redacted] This Court does not agree that merely because the issue of jurisdiction may be addressed on appeal, it is neces-

42. Civil Action No. 75–46, Docket No. 21, Tr. pp. 134, 137–38.

43. At 1118–1119, 1124.

44. At a March 13, 1975 hearing on preliminary injunction, counsel for the FTC requested that its motion for stay of all proceedings be deemed applicable to the seven actions filed subsequent to *A. O. Smith* if a preliminary injunction should issue in those actions, as well as the *A. O. Smith* case itself.

45. Defendants rely upon Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1941).

46. Janousek v. Doyle, 313 F.2d 916, 921 (8th Cir. 1963); United States v. Lynd, 321 F.2d 26, 28 (5th Cir. 1963); 9 Moore's Federal Practice ¶ 203.11, at 739 (1973).

[redacted]

sarily appropriate to stay further proceedings before it. The general rule is that "an appeal from the denial or granting of a temporary injunction should not ordinarily delay the final trial of the case on its merits." [47]

■ The Commission also argues that this Court should stay proceedings to avoid the costs and hardship to all the parties resulting from a multiplicity of actions. First, no plaintiff in these cases has yet come forward to complain of any such hardship. In fact, A. O. Smith has filed a brief opposing the grant of any stay.[48] It is therefore concluded this argument is addressed solely to the hardship of the Commission in cases in which it is a defendant. Where the FTC is the proponent of the action, it apparently regards its hardship as tolerable, since it not only has not moved for a stay but is instead filing and vigorously pursuing enforcement actions. Second, a closer examination of the alleged hardship exposes certain weaknesses in the position.

For example, the Commission requests relief from the necessity to "[litigate] simultaneously identical issues before separate fora." [49] Surely the FTC does not refer to the separate actions of the A. O. Smith proceeding and that of the seven new actions, for by appealing the Court's decisions in the latter cases, the FTC will assure that virtually identical issues will be presented to the Third Circuit in all cases, with the strong likelihood of their being consolidated for argument. Still another reason convinces the Court that FTC is unconcerned over litigating identical issues in A. O. Smith and the other seven cases. At the start of the March 13 hearing on all of these pending motions the Court inquired of FTC as to its willingness to agree to a

stay in the seven cases, with the TRO remaining in effect, pending the outcome of the appeal in A. O. Smith. The FTC responded it would not agree to a stay except upon terms which would have destroyed the status quo.

If, alternatively, the Commission is referring to the separate fora of the Southern District of New York and of Delaware, it would appear that the motion to stay, if at all appropriate, is being urged in the wrong district court. For as it stands now the Commission must argue the identical issues in the Southern District of New York that are now beyond this Court's jurisdiction and before the Third Circuit Court of Appeals.

It may be that the Commission's concern is centered not on the few issues now on appeal but rather all the other issues that still remain within this Court's jurisdiction. As to these, however, a stay would only postpone the time when the Commission must litigate those issues before this Court. Even if the Third Circuit were to decide contrary to this Court's holdings, it is impossible at this time to know on what ground such a reversal might occur. Barring reversal on jurisdictional grounds, discovery and disposition by motion or trial as to all issues raised on the merits will inevitably have to occur.

Thus by far the only certainty resulting from the grant of a stay would be delay to all parties. Neither sid' wants delay. The plaintiffs have a rig. ; to a speedy determination of their cause of action. They have a right to question witnesses who, while available now, may be unavailable at some later point in time.[50] Furthermore, if required soon by order of the Commission to commence

---

47. Nalco Chemical Company v. Hall, 347 F.2d 90, 92 (5th Cir. 1965) citing United States v. Lynd, *supra* note 45.

48. A. O. Smith, et al. v. Federal Trade Commission, et al., at pp. 1116–1117.

49. Civil Action No. 75–49, Reply Memorandum of Commission, Docket No. 18, p. 4.

50. Plaintiffs thus far have sought to depose one individual, an employee of the Commission, and the Court was immediately informed that he might soon be departed from the Commission and presumably his whereabouts unknown. A. O. Smith Corporation, et al. v. Federal Trade Commission, et al., 396 F.Supp. 1108, Affidavit of Frederic M. Scherer, Docket No. 31.

preparation of LB Reports for fiscal year 1974, plaintiffs have a strong interest in knowing whether such orders must be obeyed.

As to the defendants, the Commission has left a deep impression upon this Court that the FTC seeks as speedy a resolution of these issues as possible. Several actions taken by the Commission lead the Court to this inexorable conclusion:

(1) The Commission issued its "Order to File Special Report" on August 2, 1974, requiring 345 companies to complete and submit reports within roughly 150 days. The Commission then took until January 7, 1975 to dispose of all the various motions to quash the order which were filed, yet it did not toll the 150-day deadline. Eventually, as to certain of the corporations, an additional 30 days was granted.

(2) At a hearing on the preliminary injunction and dismissal motions in the *A. O. Smith* case held February 5, 1975, this Court inquired as to whether the FTC would be willing to forego initiating enforcement proceedings against the plaintiffs in that action for a period of 30 days to permit the Court to give full consideration to all the issues raised at the hearing. The FTC advised it could wait to enforce only fourteen days or until February 20, 1975. February 20, 1975 was the earliest date enforcement proceedings could first be begun as to all the plaintiffs in the *A. O. Smith* case.

(3) At a February 26, 1975 hearing originally intended as a scheduling conference in the *A. O. Smith* case, all counsel including the Commission agreed to file certain motions requesting suspension of the injunction and stay of all proceedings by March 7, with hearing set for March 13. On February 27, 1975 the FTC made an ex parte telephone application to the Court to present and argue these unfiled motions on the following day, February 28. The Court denied this application. A similar attempt to present the motions at a previously set hearing on an FTC application for a protective order on March 3, 1975 was turned back by the Court when the plaintiffs made clear their preference to litigate issues according to the original schedule.

(4) At the Thursday, March 13, 1975 hearing on all of these motions the Court took note of the very tight brief schedule [51] and noted that plaintiffs felt the TRO in the seven new cases would expire on March 18 unless the FTC agreed to an extension. In view of the Commission's allegations that several facts meaningfully distinguished these cases from that of *A. O. Smith,* the Court invited the FTC's consent to an extension of the TRO to permit this Court time to both give full consideration to the arguments presented and reduce the same to opinion form. The FTC declined to consent.

In summary, the actions of the FTC leave no doubt that a speedy resolution of these issues is viewed by the Commission as being paramount, overriding at times the burdens imposed on all other parties and branches of government.

For all the foregoing reasons this Court finds it inappropriate to grant a stay of proceedings pending appeal in either *A. O. Smith* or the seven other cases.

\* \* \* \* \* \*

This opinion contains, *inter alia,* the Court's decision on plaintiffs' motion for preliminary injunction and constitutes its findings of fact and conclusions of law with respect to said motion.

---

51. Simultaneous exchange of briefs on March 7 and March 11, 1975.

## ORDER

It is ordered and adjudged that:

(1) Defendants, their agents, officers, servants, and employees, and all persons in active concert or participation with them are herewith enjoined and restrained during the pendency of this litigation and until further order of this Court from:

(a) Giving notice of default to plaintiffs Inland Steel Company, Northwest Industries, Inc., Oscar Mayer & Co. Inc., Merck & Co., Inc., Hobart Corporation, The Goodyear Tire & Rubber Company and Thomas J. Lipton, Inc., for failure to file Form LB as required by the resolution of the Federal Trade Commission dated August 2, 1974, and its special orders entered pursuant thereto; and

(b) Enforcement of or causing to be enforced civil penalties and all other forms of judicial and administrative relief, including but not limited to mandamus, for plaintiffs', Inland Steel Company, Northwest Industries, Inc., Oscar Mayer & Co., Inc., Merck & Co., Inc., Hobart Corporation, The Goodyear Tire & Rubber Company and Thomas J. Lipton, Inc., failure to file the aforesaid Form LB.

(2) Defendants' motion to dismiss plaintiffs', Inland Steel Company, Northwest Industries, Inc., Oscar Mayer & Co., Inc., Merck & Co., Inc., Hobart Corporation, The Goodyear Tire & Rubber Company and Thomas J. Lipton, Inc., complaint for want of jurisdiction is herewith denied.

(3) Defendants' motion to suspend the preliminary injunction issued February 19, 1975 in Civil Action No. 75–15 is denied.

(4) Defendants' motion to stay all proceedings pending appeal in Civil Action No. 75–15 is denied.

(5) Defendants' motion to suspend the preliminary injunction issued on March 18, 1975 as more fully set forth in paragraph (1) above is denied.

(6) Defendants' motion to stay all proceedings pending prospective and actual appeal in Civil Action Nos. 75–45, 75–46, 75–47, 75–48, 75–49, 75–50 and 75–56 is denied.

(7) The Clerk of the Court is instructed to file a copy of the within Opinion and Order in each of the file jackets of the above-captioned matters.