TEXACO, INC., Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

Nos. 17379 and 17540.

United States Court of Appeals
Third Circuit.

Argued April 8, 1969.

Decided June 12, 1969.

James D. Annett, Houston, Tex. (William R. Slye, Robert E. Newey, Houston, Tex., on the brief), for petitioner.

William H. Arkin, F.P.C., Washington, D. C. (Richard A. Solomon, Gen. Counsel, Peter H. Schiff, Sol., Leo E. Forquer, Asst. Gen. Counsel, F. P. C., Washington, D. C., on the brief), for respondent.

Before KALODNER, GANEY and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Petitioner seeks review of a regulation requiring it to pay interest "compounded monthly" on refunds ordered by the Federal Power Commission (hereinafter "Commission"). On April 2, 1968, the Commission unilaterally amended Part 154.102 (18 C.F.R. 154.102) of its Regulations under the Natural Gas Act (15 U.S.C. § 717 ff.) by promulgating its Order No. 362.[1] This order estab-

1. The Order No. 362 provides, *inter alia:*
"The Commission has before it for consideration the amendment of Part 154, Regulations Under the Natural Gas Act [18 C.F.R. 154], by the prescription of a new § 154.67 and the addition of a new sub-paragraph (g) to § 154.102, to provide that the amount of interest payable on amounts refunded pursuant to section 4(e) of the Natural Gas Act shall be computed at the prescribed rate of interest compounded monthly.
\* \* \* \* \*
"*The Commission,* acting pursuant to the authority granted by the Natural Gas Act, \* \* \* *orders:*
"(A) Part 154, Subchapter E, Regulations Under the Natural Gas Act,

Chapter I of Title 18 of the Code of Federal Regulations is amended by adding a new § 154.67 and a new paragraph (g) to § 154.102 to read as follows:
"§ 154.67 Interest on Refunds.
"With respect to any rate suspension proceeding initiated under section 4(e) of the Natural Gas Act, wherein a change in rate, charge, classification, or service is made effective on or after April 30, 1968, the amount of interest required to be paid on any refund shall be computed at the annual rate of interest prescribed in the Commission order allowing the suspended rate to become effective, compounded monthly.
"§ 154.102 Suspended changes in rate schedules; motions to make effective at end of period of suspension; procedure.

lished for the first time a compound interest rate which would be required on amounts ordered refunded pursuant to § 4(e) (15 U.S.C. § 717c(e)) of the Natural Gas Act.[2] On May 1, 1968, Texaco filed with the Commission an application for rehearing of Order No. 362. The Commission took no action within 30 days, and by virtue of § 19(a) of the Natural Gas Act (15 U.S.C. § 717r(a)) its application was deemed denied. Texaco then filed a petition to review order No. 362 with this court pursuant to 15 U.S.C. § 717r(b), complaining that this new rule was promulgated without giving it or any other jurisdictional natural gas company any notice or an opportunity to participate in the rule-making through the submission of written data, views, or arguments, thus violating a mandate of the Administrative Procedure Act, 5 U.S.C. § 553(b) and (c).[3] See Superior Oil Company v. Federal Power Commission, 322 F.2d 601, 608 (9th Cir.1933), cert. den. 377 U.S. 922, 84 S.Ct. 1219, 12 L.Ed.2d 215 (1964).

█ Since the Commission's Order No. 362 specifically recognized that these are substantive amendments within 5 U.S.C. § 553,[4] it is clear that notice should have been given and Texaco should have had an opportunity to submit data, views, and arguments unless

* * * * *

"(g) With respect to any change in rate, charge, classification, or service made effective on or after April 30, 1968, the amount of interest required to be paid on any refund shall be computed at the annual rate of interest prescribed in paragraph (c) of this section, compounded monthly."

The 7% simple interest rate prevailing prior to Order No. 362 was approved in In re Permian Basin Area Rate Cases, 390 U.S. 747, 825–826, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968).

2. Section 4 of the Act affects rate changes only in (1) imposing upon the seller the procedural requirement of filing a timely notice of change, (2) giving the Commission authority to review such changes, and (3) authorizing the Commission to suspend the new rates for a five-month period and thereafter require the posting of a refund bond pending a determination of the lawfulness of the rates as changed.

The Act establishes that the Commission may require the furnishing of an acceptable bond and the payment of interest on refundable amounts secured by such bond. The implementation of Section 4(e) is derived from the Commission's power granted by Congress under Section 16 (15 U.S.C. 717o), which provides:

"The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this act * * *."

3. The following is the relevant statutory language (5 U.S.C. § 553):
"§ 553. Rule Making.
* * * * *

"(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
"(1) a statement of the time, place, and nature of public rule making proceedings;
"(2) reference to the legal authority under which the rule is proposed; and
(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.
Except when notice or hearing is required by statute, this subsection does not apply—
"(A) to * * * general statements of policy * * *; or
"(B) when the agency for good cause finds (and incorporates the finding and a brief statement of the reasons therefor in the rules issue) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.
"(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose."

4. Order No. 362 included this language:
"* * * the amendments herein prescribed may be interpreted as substantive amendments under § 553 of Title 5 of the United States Code * * *."

the Commission had good cause to find that this rule falls within an exception to § 553. The Commission contends that notice was "unnecessary" under 5 U.S.C. § 553(b) (B).[5]

The dispositive issue is whether the Commission's Order No. 362 was lawfully promulgated even though it did not provide for notice and a hearing because the Commission had good cause to disregard the notice provision on the ground that it was "unnecessary," as that word is used in 5 U.S.C. § 553(b) (B). The rule does not fall within the "unnecessary" exception relied on by the Commission since it cannot be classified as either minor or emergency in character. That exception has been discussed in the following language in Administrative Procedure Act: Analaysis Of Its Requirements As To Rule-Making, 33 A. B. A. J. 315, 318 (1947);

> "The required notice, however, may be dispensed with in any situation 'in which the agency for good cause finds (and incorporates the finding and a brief statement of the reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.' Congress has

recognized thereby that there is no need for giving the public an opportunity to participate in minor amendments to rules and also that emergency situations may arise where an agency must issue a rule forthwith without any public participation. * * * " [6]

One court has construed the language of 5 U.S.C. § 553(b) (B) to apply to situations where an agency rule is "a routine determination," "insignificant in nature and impact," and unimportant "to the industry and to the public." See National Motor Freight Traffic Ass'n v. United States, 268 F.Supp. 90, 95–96 (D.D.C. 1967).

It is clear that the new rule compounding interest cannot properly be labelled "minor" nor one in which the public is uninterested, since the compound rate would affect numerous jurisdictional natural gas companies and potentially involves large sums of money.[7] Respondent concedes that ten natural gas companies, in addition to petitioner, and one attorney on behalf of "smaller independent operators" filed requests for reconsideration of Order No. 362 and one other such company filed objection to that order (p. 4 of respondent's brief).

---

5. Order No. 362 states:
   " * * * prior notice * * * is unnecessary since the amendments impose no burden upon the persons affected thereby that may not now be imposed by *ad hoc* orders in every case initiated pursuant to section 4(e) of the Natural Gas Act whereby a suspended rate becomes effective subject to refund at the expiration of the period of suspension."

6. The Attorney General's Manual on Administrative Act (1947) contains this language at pp. 12–13:
   " 'Unnecessary' refers to the issuance of a minor rule or amendment in which the public is not particularly interested. Senate Hearings (1941), P. 882."

7. Respondent concedes that "the shift to compounding has the effect of increasing interest costs" and "the average interest charges at the rate of 7 percent compounded monthly is * * * 8.35 percent at the end of the fifth year" (p. 12 of re-

spondent's brief). This 8.35 per cent. rate over a five-year period is an average of 7.22 per cent. the first year, 7.75 per cent. the second year, 8.30 per cent. the third year, 8.91 the fourth year, and 9.95 per cent. the fifth year. Respondent does not challenge petitioner's statement that "some review periods have extended for as long as eight years with interest level then at 11.8 percent" (p. 13, footnote 8, of Reply Brief). The following footnote 3 at page 13 of petitioner's brief was not challenged by respondent:
   "3. In 1967 independent producers filed 736 changes in rate which resulted in increased amounts collected subject to refund totalling about $15,600,000, *Federal Power Commission Annual Report—Fiscal Year 1967*, Table 23 at p. 48. It is pointed out to the Court that increased amounts collected subject to refund are often held pending a Commission decision on the rate question from five to eight years."

■ We reject the argument of respondent that Order No. 362 is a general policy statement under 5 U.S.C. § 553(b) (A) and, hence, not subject to the notice requirements of 5 U.S.C. § 553. We agree with petitioner that a "general statement of policy" is one that does not impose any rights and obligations on an operator,[8] [cf. Public Service Comm'n of State of N. Y. v. Federal Power Comm'n, 126 U.S.App.D.C. 26, 373 F. 2d 816, 826–827 (1967), reversed in part on other grounds, FPC v. Sunray DX Oil Co., 391 U.S. 9, 88 S.Ct. 1526, 20 L.Ed. 2d 388 (1968)] and that Order No. 362 adopts a substantive rule imposing such rights and obligations which an operator has the burden of proving should not apply in any waiver or similar proceeding.[9]

■ Section 553 was enacted to give the public an opportunity to participate in the rule-making process. It also enables the agency promulgating the rule to educate itself before establishing rules and procedures which have a substantial impact on those regulated. See Pacific Coast European Conference v. United States, 350 F.2d 197, 205 (9th Cir.), cert. den. 382 U.S. 958, 86 S.Ct. 433, 15 L.Ed.2d 362 (1965). These procedures must be followed when an agency is exercising its legislative function in order that its rules have the force of law. Cf. N. L. R. B. v. Wyman-Gordon Company, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709, where the plurality opinion used this language:

"The rule-making provisions of that Act, which the Board would avoid, were designed to assure fairness and mature consideration of rules of general application. See H.R.Rep. No. 1980, 79th Cong., 2d Sess., 21–26 (1946); S.Rep. No. 752, 79th Cong., 1st Sess., 13–16 (1945). They may not be avoided by the process of making rules in the course of adjudicatory proceedings. There is no warrant in law for the Board to replace the statutory scheme with a rule-making procedure of its own invention. Apart from the fact that the device fashioned by the Board does not comply with statutory command, it obviously falls short of the substance of the requirements of the Administrative Procedure Act. The 'rule' created in *Excelsior* was not published in the Federal Register, which is the statutory and accepted means of giving notice of a rule as adopted; only selected organizations were given notice of the 'hearing,' whereas notice in the Federal Register would have been general in character; under the Administrative Procedure Act, the terms or substance of the rule would have to be stated in the notice of hearing, and all interested parties would have an opportunity to participate in the rule-making."

■ The Commission contends that the new amendment does not impose any burden "upon the persons affected thereby that may not now be imposed upon them by *ad hoc* orders in each case initiated pursuant to § 4(e) of the Natural Gas Act, whereby a suspended rate becomes effective subject to refund at

8. It is noted that "Statements of General Policy and interpretations Under the Natural Gas Act" are set out in Part 2, General Policy and Interpretations, of the Commission's Rules of Practice and Procedure, 18 C.F.R., Subchapter A, Part 2. If Order No. 362 established a "general statement of policy," the Commission would have inserted this rule in such Part 2.

9. The Commission cannot now contend by alternative argument that Order No. 362 established a "general statement of policy," since the court's power to review is limited to testing the validity of the theories (based on 5 U.S.C. § 553(b) (B)) used by the agency. See Securities & Exchange Comm'n v. Chenery Corp., 318 U. S. 80, 88, 94–95, 63 S.Ct. 454, 87 L.Ed. 626 (1943); see, also, FPC v. United Gas Pipe Line Co., 393 U.S. 71, 73, 89 S.Ct. 55, 21 L.Ed.2d 55 (1968); Securities & Exchange Comm'n v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). In the present case, the Commission relied completely on 5 U.S.C. § 553(b) (B) as the reason why it need not give notice or an opportunity to submit data, views, or arguments; the Commission placed no reliance whatsoever on 5 U.S.C. § 553(b) (A).

the expiration of the period of suspension." However, the crucial fact is that the Commission elected to proceed in this case by making a general rule [10] and, when engaged in rule-making, it must comply with the procedural requirements imposed on rule-making by the Administrative Procedure Act, which it failed to do in promulgating Order No. 362.[11]

We hold that the Order does not fall within the exception embodied in 5 U.S. C. § 553(b) (A) or (B), and, therefore, is ineffective because the Federal Power Commission did not have good cause for its failure to comply with the above-mentioned notice requirements of the Administrative Procedure Act. We need not, and do not, express any opinion on the merits of the challenged rule.

For the foregoing reasons, at our No. 17379 we will set aside Order No. 362, without prejudice to the right of the Federal Power Commission to proceed in accordance with 5 U.S.C.A. § 553 in establishing a general rule.[12]

Subsequent to filing the above-mentioned application for rehearing of Order No. 362 on May 1, 1968, Texaco moved to permit a number of pending rate changes to become effective and requested the Commission in such motions to waive the requirement that interest on refunds be compounded monthly. These motions, which were consolidated in one proceeding before the Commission, alleged that Order No. 362 violated 5 U.S.C. § 553 and incorporated by reference the arguments in its May 1968 application. On September 26, 1968, the Commission issued two orders. One order denied the May 1 application of Texaco and similar applications of other natural gas operators (see pp. 3–4 above) for rehearing and reconsideration of Order No. 362, after reciting that:

"The Commission finds:

"Petitioners' applications for rehearing and reconsideration do not present any new facts or principles of law which were not considered by the Commission when it promulgated Order No. 362, or which having now been considered, warrant modification or reversal of that Order."[13]

The second order permitted the above-mentioned rate changes to become effective and denied the requests for waiver of the compound interest rate as applied to any refunds which might become due with respect to such rate changes, the lawfulness of which had not yet been determined.[14] An application for rehearing of the second order by Texaco was denied by the Commission on October 18, 1968 and Texaco's Petition to Review the denial of this second order is filed at our No. 17540. Respondent concedes that this second petition for review seeks the same basic relief as the first petition.

Respondent contends that Texaco is not harmed as far as refunds incident to these pending rates are concerned until it may be ultimately determined that the pending rate changes are not lawful.

---

10. The "choice" of the Commission to proceed by "general rule" distinguishes cases such as Securities & Exchange Comm'n v. Chenery Corp., 332 U.S. 194, 203, 67 S. Ct. 1575, 91 L.Ed. 1995 (1947). Cf. N. L. R. B. v. Wyman-Gordon Company, supra; N. L. R. B. v. Q–T Shoe Manufacturing Co., Inc., et al., 409 F.2d 1274 (3rd Cir. 1969).

11. Having decided that the Commission failed to meet the notice requirements of the Administrative Procedure Act, we need not consider appellant's other contentions except insofar as they are relevant to Appeal No. 17540.

12. Respondent's Motion to Dismiss the Petition for Review, filed in No. 17379, will be denied.

13. This order also recited:
"The Commission has examined the substantive objections to Order No. 362 and has concluded that no relevant or material facts have been presented which have not previously been considered in the promulgation of the compound interest requirement."

14. This order stated: "In view of our order * * * denying rehearing and reconsideration of Order No. 362, the requests for waiver of Order No. 362 are denied".

We believe that Texaco is harmed by being faced with such a general rule which it must overcome in any ad hoc waiver proceeding such as that resulting in the order of October 18, 1968. In filing a waiver application, an operator is entitled to be confronted only with rules adopted in the procedural manner prescribed by Congress.[15]

For the reasons stated above, paragraph B of the Order issued September 26, 1968, which denies the request for waiver of Order No. 362, will be set aside with direction that the motions for such waiver shall be reconsidered in the light of this opinion. [16]

---

15. This record does not present a situation such as that described in the following language of the Supreme Court of the United States, since the substance of the Commission's rule is "seriously contestable":

"Here, * * * the substance of the Board's command is not seriously contestable. There is not the slightest uncertainty as to the outcome of a proceeding before the Board, whether the Board acted through a rule or an order. It would be meaningless to remand."

N. L. R. B. v. Wyman-Gordon Company, *supra*, footnote 6 of plurality opinion.

16. We note that there was no hearing or opportunity to present oral argument on the motions for waiver, possibly because none was requested. See 15 U.S.C. § 717d. Cf. 5 U.S.C. §§ 554–557; Marine Engineers' Ben. Ass'n, No. 13 v. National Labor Rel. Bd., 202 F.2d 546 (3rd Cir.), cert. den. 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345 (1953).