**Rhonda GOULD, et al., Plaintiffs,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

No. C2–87–964.

United States District Court, S.D. Ohio, E.D.

Oct. 2, 1992.

■■■■■■■■■■■■■■■■

Thomas William Weeks, Ohio State Legal Services Assoc., Columbus, OH, Anne Sessums Rubin, Southeastern Ohio Legal Service, Athens, OH, for Rhonda Gould.

Susan Morgenstern, Cleveland Legal Aid Soc., Cleveland, OH, for Richard Conkey, Sr.

Joseph E. Kane, U.S. Attorney's Office, Columbus, OH, for HHS.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This case is a class action being prosecuted on behalf of certain recipients of Supplemental Security Income (SSI) benefits. The plaintiffs claim that, following certain amendments to the Social Security Act in 1981 and 1982, the Secretary was required to adopt a regulation which, directly or indirectly, addressed the situation of people who were receiving Aid to Families with Dependent Children (AFDC) and who were then awarded SSI benefits. By not addressing that situation, the plaintiffs claim that the amount of their SSI benefits, for the first two months they received them, were improperly reduced. The relief they seek is an order directing the Secretary to promulgate a regulation which fairly deals with their situations.

Each party has moved for summary judgment, and each apparently agrees that all of the issues in this case are appropriately addressed in the context of those motions. For the reasons that follow, the Court concludes that the plaintiff class is entitled to the relief requested, and will therefore direct the Secretary to promulgate an appropriate regulation pursuant to the Administrative Procedure Act in order to carry out the statutory mandate contained in 42 U.S.C. § 1382(c).

### I.

The facts of this case are straightforward and not disputed. The four named plaintiffs, whose situations have already been determined to be typical of those of other members of the class, had similar experiences when they were awarded SSI benefits. Prior to the date of such award, which is typically made based upon the existence of a disability which precludes the recipient from engaging in substantial gainful activity, each plaintiff was receiving money under the AFDC program. By statute, see 42 U.S.C. § 602(a)(24), if an individual receiving AFDC benefits becomes eligible for SSI benefits, the AFDC benefits are terminated. The termination date is the commencement date of SSI benefits.

In the case of each of the named plaintiffs, the Secretary, acting pursuant to procedures contained in his Program Operating Manual Systems ("POMS"), contacted the state agency which was responsible for the payment of AFDC benefits, informed that agency that the plaintiff had become eligible for SSI benefits, and verified both the amount previously received through AFDC and the fact that the AFDC payments would terminate on the date that SSI benefits began.

The purpose of such contact, however, was not necessarily to verify that an individual would not receive benefits under both programs when, by law, that individual was eligible under only one or the other. Rather, based upon a statutory change made in 1981, the Secretary was required to determine the amount of SSI benefits to be paid using "retrospective monthly accounting," or RMA. Since the amount of SSI benefits depends, at least in part, upon other income being received by the recipient, the Secretary must make a calculation which takes into account that other income. There are at least two different ways to approach this problem: to determine the amount prospectively, which involves an estimate of the amount of other income which the SSI recipient *will* receive on either a monthly, quarterly, or other periodic basis; or retrospectively, which calculates the next month's benefits on the basis of income which has *actually* been received during the preceding month. The plaintiffs in this case received SSI payments calculated by using the retrospective accounting method.

In the case of these plaintiffs, the use of a retrospective monthly accounting method produced an anomalous result. Looking backward, each of the plaintiffs was receiving money under the AFDC program. If that amount is included in the Secretary's calculation of SSI benefits, those benefits are lower than if the AFDC income is disregarded. However, the AFDC benefits stop when SSI payments begin. Consequently, for several months (two in the case of each of these plaintiffs), use of the retrospective accounting method resulted in the plaintiffs receiving an SSI payment which was lowered to reflect the receipt of AFDC benefits during months when no such benefits were being received. The legal question presented by these facts is whether these reductions were contemplated by law, or whether the law contemplated that the Secretary would address, in some fashion, the apparent inequity created by counting AFDC benefits as income for purposes of reducing the level of SSI benefits when, by law, the AFDC benefits terminated before the SSI payments began.

There are a number of other matters which the plaintiffs have discussed in the fact section of their summary judgment memorandum which can be more easily understood after the statutory framework underlying their claim is more fully set forth. Consequently, these additional facts will be included as part of the Court's legal discussion of this matter.

## II.

The key statutory provision which underlies this litigation is 42 U.S.C. § 1382(c). As amended in 1982, that section provides that the amount of SSI benefits payable in any particular month is to be determined "for such month on the basis of income and other characteristics in the first or, if the Secretary so determines, second month preceding such month." *See also* 20 C.F.R. § 416.420(a), stating the "general rule" that "[w]e use the amount of your countable income in the second month prior to the current month to determine how much your benefit amount will be for the current month." Although the current version of that regulation uses prospective accounting for certain types of income, including AFDC, it did not do so at the times relevant to this lawsuit.

Although § 1382(c) contains an express directive that the Secretary use retrospective accounting, it also provides, in subsection (4)(A), that:

"[I]f the Secretary determines that reliable information is currently available with respect to the income and other circumstances of an individual for a month ..., the benefit amount of such individual under this subchapter for such month may be

determined on the basis of such information."

Subsection (4)(B) reads in full as follows: "The Secretary shall prescribe by regulation the circumstances in which information with respect to an event may be taken *into account pursuant to subparagraph (A)* in determining benefit amounts under this subchapter."

The parties have referred to these statutory provisions as the "Reliable Information Exception."

Section 1382(c), as it relates to this case, became effective in 1982. However, no final regulations implementing any provision of this statute were adopted until 1985. On November 26, 1985, the Secretary published, in 50 *Federal Register* 48,563 *et seq.*, regulations implementing retrospective monthly accounting. According to the supplemental information provided, even in the absence of a regulation, the Secretary had been using retrospective monthly accounting since April, 1982. In the section of the *Federal Register* entitled "Comments received following publication of the notice of proposed rule-making published October 29, 1981," the Secretary noted a comment that retrospective accounting might result in overpayments if a recipient's income from other sources, such as social security insurance benefits, were increased. Under that scenario, although it was certain that other countable income would increase, because the increase could not be picked up retrospectively, the SSI benefit would be higher than appropriate. In response, the Secretary noted that the statute had been *amended to deal with the relationship* between social security insurance benefits and SSI benefits in order to prevent such an overpayment from occurring. The Secretary then stated:

"Section 1611(c) of the Act, as amended [42 U.S.C. § 1382(c)] also provides that the Secretary prescribe by regulation the circumstances under which there is reliable information currently available on other kinds of income so that changes in amounts may be used to determine the monthly SSI benefit for the month in which the change occurs. However, *we have not yet determined the best way to implement this provision with reference to benefits other than Social Security increases* at the time of an SSI benefit increase."

50 *Federal Register* 48568 (November 26, 1985) (emphasis supplied).

The Secretary never did publish a regulation dealing either with AFDC benefits or any other species of potentially "reliable information" which might justify a deviation from the general procedure of retrospective accounting. However, in 1987 the Act was amended to include a new section, 42 U.S.C. § 1382(c)(5), which directs the Secretary to take AFDC benefits into account only for months in which such benefits are paid, and requires that they not be taken into account in determining the amount of the benefit for any other month. The Sixth Circuit Court of Appeals has since determined that this statutory change is to be given only prospective application. *Ryan v. Sullivan*, 972 F.2d 721 (1992). Thus, adoption of that amendment has no effect on the claims being made in this case.

AFDC benefits are not, of course, the only potential candidates for treatment under the "reliable information exception." Consequently, the Secretary would not appear to have been relieved of any obligation he had to promulgate regulations implementing that exception by the 1987 amendment to Section 1382(c). The only other action taken by the Secretary with respect to that exception, however, was published in 56 *Federal Register* 14268 (April 8, 1991). The action taken by the Secretary is not a proposed regulation but a "notice." The summary of the notice states that the Secretary "has determined that no reliable information which is currently available and is administratively feasible to use exists" and the Secretary is therefore "exercising his discretion by declining to determine the SSI benefit amount for a current month using an alternate method, as provided under § 1611(c)(4) of the Act." The effective date of the notice is March 8, 1991.

As justification for this action, or non-action, the Secretary's "supplementary information" indicates that the Secretary examined information regarding only other federal benefit programs "to determine whether

these sources could provide reliable information which is currently available and is administratively feasible to use." Only information available by computer interface from other agencies was considered. For information which would cause an adverse action against an individual (the reduction, suspension, termination or denial of payments), the Secretary noted that the individual must be given notice and an opportunity to challenge the accuracy of the data. Such information, in the view of the Secretary, is therefore not "currently available" and thus does not meet the statutory criteria. With respect to information which might result in favorable consequences for the recipient, the Secretary concluded that this information also could not be used "because of current systems limitations which prohibit the separate processing of information which result in favorable payment consequences...." The supplementary information does not indicate that the Secretary studied anything other than data available by computer interface. It does not address the situation involving persons who, between 1982 and 1988, had their benefits reduced as a result of counting their AFDC payments against SSI payments.

The plaintiff's argument in this case is straightforward. Noting that when Congress adopted 42 U.S.C. § 1382(c)(4)(B), it used the phrase "shall prescribe by regulation" the circumstances under which reliable information could be taken into account in determining SSI benefit amounts, plaintiffs assert that the Secretary had an obligation to do so. The process of adopting a regulation is, of course, prescribed by the Administrative Procedure Act, and involves the opportunity for affected parties to receive notice of proposed regulations and to comment on them. Based upon the fact, which appears not to be disputed, that in each instance where an AFDC recipient was granted SSI benefits, the Secretary was required to contact the state or local agency both to determine the amount of the SSI recipient's AFDC benefits, and to verify termination of those benefits, plaintiffs make at least a plausible argument that such information is both "reliable" and "currently available," which are the only modifiers which Congress chose to use in § 1382(c)(4)(A). Thus, it is their

view that the regulation process might well result in the adoption of a regulation which would restore to them the benefits which they believe were wrongfully withheld.

Almost eight full pages of the Secretary's twelve-page memorandum are addressed to the question of whether AFDC benefits, and their termination upon receipt of SSI benefits, is the type of "reliable" and "currently available" information which the Secretary would, if he had promulgated a regulation, have included in it. That is not really the issue in this case, nor does it respond directly to plaintiffs' argument as outlined above. The balance of the Secretary's memorandum is more directly addressed to plaintiffs' contention that some type of regulation was required to be issued. In defending the nonissuance of a regulation, the Secretary asserts that the two sections of the *Federal Register* referred to above, those being the 1985 statement that the matter was still under consideration and the 1991 notice that no regulation would be promulgated, constituted full compliance with any requirement that a rule be published. The Secretary also argues that even if a regulation were published, it could not have retroactive effect, and therefore could not benefit the plaintiffs in this case. Finally, the Secretary argues that the statute is permissive rather than mandatory, and granted the Secretary the discretion not to issue a regulation at all.

The first and second of these arguments border on the frivolous. The term "regulation" has a specialized meaning in the law, one which Congress was clearly aware of in 1982. A regulation which, when adopted, has the force of law, is required by 5 U.S.C. § 553 to be preceded by notice published in the *Federal Register*, including a statement of the time, place, and nature of the rulemaking proceedings, reference to the legal authority under which the rule was proposed, and the terms or substance of the rule or a description of the subjects and issues involved. That section also requires that, once notice is given, interested persons be given an opportunity to participate in the rulemaking process through submission of data, views and arguments, and requires the agency to consider all relevant matter presented.

The purpose of 5 U.S.C. § 553 is to assure fairness and full consideration of rules of general application, *see NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969), and to give the public an opportunity to participate in the rule-making process. *Texaco, Inc. v. Federal Power Commission*, 412 F.2d 740 (3d Cir.1969). The end result of this process is a "regulation." It therefore stretches the Court's credulity to suggest that a "notice" that no regulation will be issued, which notice was not preceded by any publication or period for public comment, is the same as a regulation.

Similarly, the fact that the Secretary does not ordinarily possess the power to make rules of retroactive application does not, as the Secretary argues here, prevent the Court from ordering the Secretary to take into account, in any rule-making procedure, the circumstances of these plaintiffs even though those circumstances occurred in the past. The Secretary's reliance on *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) is simply misplaced. That case holds that the Secretary has the statutory authority to promulgate retroactive rules only when authorized to do so by act of Congress. It does not discuss whether the Court can, as a remedy for a failure timely to promulgate any rule at all, direct the Secretary to fashion a rule which might have a favorable impact upon persons who, but for the Secretary's inaction, would have been able to benefit from application of the rule. The Secretary has cited no authority to the effect that the Court, sitting in equity and with full equity powers, is nonetheless prohibited from making such an order.

■ Those two arguments having been disposed of, the Court turns to the crux of this case, which is whether the plaintiffs or the Secretary have the better of the argument as to whether the Secretary was required, or merely permitted, to promulgate a rule which dealt in some fashion with the "reliable information exception." Any such discussion must begin, of course, with reference to the general principles of statutory construction, since both parties' arguments are based upon the language of the statute itself.

■ With respect to the interpretation of the statutes as enacted by Congress, "it is elementary that '[t]he starting point in every case involving construction of a statute is the language itself.'" *Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979), *quoting Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring); *see also United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). If the statutory language is plain, it conclusively establishes the intent of the legislature except in those rare cases where the result of giving the statute its plain meaning is demonstrably different from the clear intent of the drafters of the statute. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. at 242, 109 S.Ct. at 1031; *see also United States v. Underhill*, 813 F.2d 105, 111 (6th Cir.), *cert. denied sub nom. Rayburn v. United States*, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987).

Strict adherence to the rule that a statute is to be given its plain meaning has significant desirable consequences. First, it discourages judicial legislating, thereby keeping the legislative power vested in the appropriate and popularly-elected branch of government. It also encourages the drafters of legislation to speak plainly and precisely, knowing that if they do so, the courts will enforce the law as it has been clearly articulated. Finally, it promotes certainty in the law, eliminating the need for resort to other interpretive devices such as a review of legislative history, which is usually a grab-bag from which support for almost any interpretation of a statute can readily be plucked. There are cases, however, where Congress has not clearly expressed in the language of a statute what result was intended. "Where the literal language of the statute does not conclusively reveal legislative intent, the courts must look beyond literal meaning, analyzing the provision in context with the whole." *In re Arnett*, 731 F.2d 358, 361 (6th Cir.1984). Where the context of an entire statute does not reveal the meaning of a

particular provision, resort to extrinsic aids to demonstrate Congressional intent, such as legislative history, can be an appropriate way to determine legislative intent, or at least to support a particular reading of a statute where the intent of the drafters is sufficiently obscure that it can never be divined with certainty.

The parties have each cited legislative history and other extraneous material to the Court in support of their respective positions. Some of these materials are fairly persuasive; for example, the plaintiffs point to a letter which then-Secretary of Health and Human Services Richard Schweiker directed to House Speaker Thomas P. O'Neill in connection with the 1982 amendments to the Act. In attachments to that letter describing various portions of the proposed bill, the Secretary represented unequivocally that he would "be *required* to issue regulations to implement this new paragraph (4) of § 1611(c), that specify the circumstances in which information will be considered reliable ... and the types of cases to which he will apply this authority." (emphasis supplied). The Court finds it unnecessary to consider any of these extraneous materials, however, because the statute is as plain as it can be with respect to the Secretary's obligation to promulgate such a regulation.

The Secretary's contrary argument focuses to a large extent not on 42 U.S.C. § 1382(c)(4)(B), but on subsection (A).. That subsection, to be sure, contains some language of discretion. It provides that the Secretary "may" determine the amount of monthly benefits prospectively rather than retrospectively if the Secretary has made a determination that "reliable information is currently available" concerning the amount of other income to be received during that month. The fact that the Secretary is authorized (one of the meanings of "may") to take such information into account is also reiterated in subsection (B). However, no such arguably discretionary language is contained in the first part of that subsection, which contains the duty to prescribe a regulation implementing the reliable information exception. The word Congress chose is "shall." "Shall" does not ordinarily mean "may," any

more than the duty to prescribe a regulation is fulfilled by stating that no regulation will be prescribed.

The Secretary argues, however, that the Court should defer to his interpretation of the statute. Such deference is due, of course, only when that interpretation is a reasonable one and meets other qualifications, such as being a long-standing interpretation by an agency with expertise in the area. The Court does not believe that the Secretary of Health and Human Services has any special expertise in determining whether a statute which, on its face, contains a mandatory duty to prescribe a regulation, can be considered to be discretionary. Further, it does not appear that the Secretary's interpretation of that statute has been consistent over time. Certainly, Secretary Schweiker's interpretation is consistent with the statute's containing a mandatory duty to prescribe a regulation. The 1985 comments published in the *Federal Register* do not suggest that the Secretary was exercising discretion not to promulgate a regulation, but rather implied the opposite: that the Secretary was still considering how best to implement the reliable information exception. The Secretary's subsequent choice to do nothing, and to argue that such inaction is consistent with a statute which imposes a mandatory duty to prescribe a regulation, is simply not an interpretation to which the Court can or should defer.

Given the facts of this case, it can be inferred that the Secretary was much more concerned with insuring that his accounting method was accurate when it meant reducing SSI benefits to account for a known increase in other income than he was in insuring accurate accounting when the award of SSI benefits would, by operation of law, result in the termination of other income. Perhaps this is explained by the Secretary's argument that the purpose behind the 1981 and 1982 amendments was to save money for the government. It is equally clear to this Court, however, that the purpose of §§ 1382(c)(4)(A) and (B) was to require the Secretary to consider whether reliable information was available, *whether it favored or disfavored a claimant,* which could be used to produce a

more accurate calculation of SSI benefits than a strictly retrospective or strictly prospective method of accounting. Additionally, Congress clearly contemplated that the Secretary would consider this issue and deal with it through the administrative rule-making process. By making this choice, Congress contemplated that persons like the plaintiffs would be able to have input into that process so that, even if the Secretary ultimately concluded that their viewpoint was invalid, that decision would be made only after the rule-making process was properly followed.

The requirements of the Administrative Procedure Act are not mere formalistic guidelines for the adoption of rules. They have substantive content and play a vital role in our system of democratic government. As the Court of Appeals for the Third Circuit has noted,

> "Section 553 [of the Administrative Procedure Act] was enacted to give the public an opportunity to participate in the rule-making process. It also enables the agency promulgating the rule to educate itself before establishing rules and procedures which have a substantial impact on those regulated. [citation omitted]. These procedures must be followed when an agency is exercising its legislative function in order that its rules have the force of law."

*Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740, 744 (3d Cir.1969). It is this very opportunity to participate that the plaintiffs in this case have been deprived of, and, since Congress intended just the opposite, the Court has a duty to redress that deprivation.

### III.

Having found that the Secretary was required by statute to promulgate a rule, in accordance with 5 U.S.C. § 553, implementing the Congressional mandate found in 42 U.S.C. § 1382(c)(4), the court must now consider what remedy is appropriate for the Secretary's violation of that statutory mandate. Plaintiffs, quite correctly, argue only for a directive that the Secretary promulgate such a rule. Although both parties have also presented arguments as to why the informa-

tion concerning the level and termination of AFDC benefits was both reliable and currently available to the Secretary at the time the SSI benefit calculation was made, that is not now the issue before the Court. The Court specifically declines to rule either on the Secretary's argument that there is no such information, the position taken in the 1991 notice, or on the plaintiffs' argument that the 1991 notice includes factors such as administrative feasibility which cannot be found in the enabling statute. These arguments may well be mooted by the content of any rule which is ultimately adopted, and, if they are not, they can be raised in any subsequent judicial proceeding challenging the rule as inconsistent with the statutory mandate.

Consequently, based upon the above analysis, the motion of the Secretary for summary judgment is DENIED, and the motion of Plaintiffs for summary judgment is GRANTED. The Secretary of Health and Human Services is ORDERED, within 90 days of the date of this Order, to propose, in accordance with 5 U.S.C. § 553, a rule implementing the reliable information exception contained in 42 U.S.C. § 1382(c), and to consider in that process whether, without regard to concerns of retroactivity, the situations of the class plaintiffs should be encompassed within such a rule. The Clerk shall enter judgment in this case in favor of the plaintiffs.