[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above captioned case is the plaintiffs' appeal from a decision of the State Commissioner of Transportation CT Page 5204-X ("Commissioner") subjecting them to penalties for operating taxi services outside the areas authorized by their licenses and for operating livery service in violation of regulations.
The plaintiffs claim that the Commissioner violated their procedural rights by granting party status to competitors and by failing to provide the plaintiffs with a bill of particulars as to the alleged violations of their licenses and of Department of Transportation ("DOT") regulations.
The plaintiffs also claim that the Commissioner acted erroneously and contrary to law in its substantive determinations that the plaintiffs had operated in a fashion not authorized by their licenses. The plaintiffs further claim that the Commissioner was without authority to impose penalties for failure to keep records in compliance with memoranda issued by the DOT.
History of the Proceedings
The Department of Transportation ("DOT") has authority to issue licenses to operate taxi and livery services in Connecticut. General Statutes §§ 16-281a; 13b-389-414; 13b-95-100 (taxicabs); 13b-101-108 (motor vehicles in livery service). Persons wishing to operate either taxicabs or livery services must obtain a certificate of convenience from the DOT and must operate within the limitations of the certificate issued; General Statutes §§ 13b-97-103; and livery services must comply with the rate schedule established by the DOT. General Statutes §13b-102. (Previously, taxi and livery services were regulated by the Department of Public Utility Control).
At the time of the administrative action at issue, the statutes and regulations pursuant to which the DOT regulated the plaintiffs were codified in Title 16 rather than in Title 13b of the Connecticut General Statutes. This court will refer hereafter to the references to Title 16 where necessary to correspond to the references in the administrative adjudication.
By citations dated November 4, 1993, The DOT cited plaintiffs Waterbury Yellow Cab and Service Co. ("Waterbury Yellow Cab") and The Yellow Cab Company of New London and Groton, Inc. ("New London Yellow Cab") to show cause why their certificates to operate taxicab service should not be revoked, suspended or amended for a variety of alleged violations of the DOT CT Page 5204-Y regulations that were identified as having occurred between May 13 and June 23, 1993:
 1. operating outside the territory authorized in their certificates and in a different manner than authorized, in violation of Regulation § 16-319-13(c);
 2. failing to make records concerning their operations available for DOT examination, in violation of Regulation § 16-319-7;
 3. failing to maintain records of their operations in sufficient detail to respond to a DOT investigation.
By a citation dated November 4, 1993, the DOT cited plaintiff Curtin Livery for alleged violations in the same time period:
 1. operating livery service at rates other than those filed with and approved by DOT; and
 2. failing to maintain sufficiently detailed records of its operations.
The charges set forth above were initiated after the DOT received complaints from other taxi operators that the plaintiffs were operating taxi services and charging taxi rates in picking up fares at Bradley International Airport even though their certificates and contracts with the DOT allowed them to perform only limited service at the airport in particular circumstances or at livery fares. Competitors complained that these violations were reducing the volume of taxi business available to taxi services that had certificates allowing them to perform taxi services at the airport.
The DOT granted party status to the Greater Hartford Transit District, which regulates the provision of taxi services at the airport, and to several taxi and livery companies: Cotter Garage, Bloomfield Yellow Cab, Airport Taxi and Tunxis Cab. The DOT allowed each of these parties to present their own witnesses and evidence in support of the claims against the plaintiffs and to cross-examine witnesses called by the DOT and the plaintiffs.
At the second day of the hearing, December 14, 1993, the plaintiffs requested a bill of particulars. They do not claim to have made such a request prior to the commencement of the hearing. The hearing took place over four days: December 7, 1993; CT Page 5204-Z December 14, 1993; December 20, 1993; and January 13, 1994.
By a decision dated September 8, 1994, the DOT found that plaintiffs Waterbury Yellow Cab and New London Yellow Cab were authorized to take taxi passengers to the airport from their authorized core towns, which did not include towns in the area of Hartford or the towns around Bradley International Airport, and, by virtue of a contract authorized by the DOT, to pick up passengers in the taxi queue line at the airport and transport them to any desired destination. The DOT found that these plaintiffs were also authorized to perform reserved services from the airport, that is, rides furnished because of a prior reservation by the customer rather than by a flag down. The DOT found that the Yellow Cab plaintiffs had operated beyond these authorized activities on thirty-five occasions between May 13, 1993 and June 23, 1993 by picking up passengers other than to-and-from their authorized core towns and from locations at or around the airport other than the airport taxi queue line, in particular, from the Sheraton Hotel at the airport, in violation of Regulation § 16-319-13(c).
The DOT also found that the Yellow Cab plaintiffs had failed to make records of trips available to the DOT within a three-day time period and that these plaintiffs violated Regulation §16-319-8 by failing to keep trip records that included the full name of the driver, public service operator's number, vehicle identification number, starting and ending times of each trip and the street name and numbers of each trip origin and destination and the number of passengers transported.
The DOT found that plaintiff Curtin Livery violated Regulation § 16-325-7 by performing taxi (unreserved) service rather than livery service (by prior reservation) and that it charged rates different from the livery rates established for this carrier by the DOT. The DOT further found that Curtin Livery violated regulation § 16-325-5 by intermingling its accounts with those of Waterbury Yellow Cab and New London Yellow Cab, by failing to make its records available to the DOT within three days, and by failing to record the addresses of the trip origination and destination, separate charges for waiting time and total mileage and assessed charges for each trip.
The DOT imposed the following penalties for the violations found: CT Page 5204-AA
1. Suspension for 180 days of the privileges of Waterbury Yellow Cab and New London Yellow Cab to solicit, receive or discharge taxicab passengers at Bradley Airport;
2. Suspension for thirty days of livery service pursuant to Permit #112 issued to Curtin Livery.
3. Amendment of Curtin Livery's Permit #112 to prohibit any vehicle operated under that permit from being operated as a taxicab as defined by General Statutes § 13b-95.
4. DOT staff review of the plaintiffs' records on a biannual basis for two years.
The plaintiffs commenced this appeal on October 4, 1994.
Aggrievement
The DOT does not contest that the plaintiffs are aggrieved by the ordered sanctions limiting their operations, and the court finds that the plaintiffs are aggrieved according to the test for aggrievement set forth in Light Rigging Co. v. Dept. of PublicUtility Control, 219 Conn. 168 (1991).
Standard of Review
With regard to claims of procedural irregularities, it is the duty of the court to review such claims and determine whether statutory and constitutional requirements were met. Adriani v.Commission on Human Rights and Opportunities, 220 Conn. 307
(1991).
With regard to claims concerning the rulings of the DOT as to the substance of the allegations of violations, the scope of review is limited by the Uniform Administrative Procedure Act, specifically, General Statutes § 4-183. Dolgner v. Alander,237 Conn. 272, 280 (1996); Perkins v. Freedom of InformationCommission, 228 Conn. 158, 164 (1993). "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." Dolgnerv. Alander, 237 Conn. 280; Dufraine v. Commission on Human Rightsand Opportunities, 236 Conn. 250, 259 (1996); Schallenkamp v.DelPonte, 229 Conn. 31, 40 (1994). CT Page 5204-BB
This court may not retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. Dolgner v. Alander, 237 Conn. 280;Griffin Hospital v. Commission on Hospitals Health Care,200 Conn. 489, 496, appeal dismissed, 479 U.S. 1023,107 S.Ct. 781, 93 L.Ed.2d 819 (1986).
"An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." Dolgner v.Alander, 237 Conn. 281. While evidence may be "substantial" even if it is "less than the weight of the evidence," Dolgner, id. the Connecticut Supreme Court has found evidence that is conclusory and unspecific, without findings as to dates or particulars of misconduct, not to be substantial, because the hearing officer lacked "an opportunity to assess and to weigh independently and adequately the accuracy and reliability of the evidence presented." Dolgner, 237 Conn. 282.
With regard to conclusions of law reached by an administrative agency, the court must determine whether the agency's conclusions resulted from a correct application of the law to the facts found and whether the agency correctly interpreted the law according to rules of statutory construction.Connecticut Alcohol Drug Abuse Commission v. FOIC, 233 Conn. 38,39 (1995). Where the issue is one of law, the Supreme Court has stated that "it is for the courts, and not for the administrative agencies, to expound and apply governing principles of law." Bridgeport Hospital v. Commission on HumanRights and Opportunities, 232 Conn. 91, 109 (1995), citingN.L.R.B. v. Brown, 380 U.S. 278, 291 (1965).
PROCEDURAL ISSUES
1. Participation of Intervenors in Presentation of Evidence
The plaintiffs assert that their right to due process of law was violated because the DOT allowed taxi companies that had complained to the DOT about the plaintiffs' operations at the airport to present and cross-examine witnesses.
General Statutes § 4-177a(b) and (d) provide that an administrative agency has discretion to permit intervenors to introduce evidence and cross-examine witnesses, plainly in aid of the agency's goal of CT Page 5204-CC ascertaining the facts.
While the plaintiffs were entitled to present evidence to counter the charges against them, that right did not include a right to limit or control the means by which the agency mustered evidence against them. While the plaintiffs complain that parties with an adverse economic interest and a potential bias were permitted to participate in the presentation of the evidence, there is no reason to presume that an administrative agency cannot differentiate the statement of opponents with pecuniary interests from those of neutral investigators and make appropriate differentiations in the weight and inferences to be accorded their testimony.
The plaintiffs are not entitled by principles of due process to limit the sources of evidence that the agency may hear and consider. Their right was to cross-examine and attempt to rebut that evidence, and they do not claim to have been curtailed in that effort.
The Connecticut Supreme Court has held that the procedures of the Uniform Administrative Procedure Act comport with the constitutional requirements of due process of law. Adamchek v.Board of Education, 174 Conn. 366, 369 (1978); Pet v. Departmentof Health Services, 228 Conn. 651, 661 (1994). These procedures include participation by intervenors pursuant to § 4-177a.
This court finds no procedural irregularity or violation of the plaintiffs' right to due process of law from the agency's decision to let those with direct knowledge of the practices at issue assist in presenting them.
2. Bill of Particulars
A further procedural claim of the plaintiffs is that they were not provided with a written bill of particulars when they requested one. Notice of the charges is uncontestably a requisite of due process of law. Morgan v. United States, 304 U.S. 1, 22;Hart Twin Volvo Corp. v. Commissioner of Motor Vehicle, 165 Conn. 42,44-45 (1973). Adequate notice of the reasons asserted for depriving them of their property interest in their taxis and livery licenses was necessary to enable the plaintiffs to defend that interest through rebuttal evidence of their own. Hart TwinVolvo Corp., 165 Conn. at 45. CT Page 5204-DD
The record reveals that the plaintiffs were furnished with a statement of charges dated November 4, 1993 titled "Rescheduled Citation" enumerating the specific charges. Each charge identifies by number the DOT regulation claimed to have been violated and the conduct claimed to constitute the violation. (Record, Doc. 44). The charges do not, however, indicate the date of each of the claimed violations.
At the first day of the administrative hearing on December 7, 1993 the plaintiffs made no objection to proceeding and indicated no inability to determine what violation was alleged. Their counsel acknowledged that he understood that the complaints received by the DOT contained the details of the claimed violation. (Record, Doc. 49, p. 21). After the completion of the first day of the hearing, the plaintiffs sent the hearing officer a request for a bill of particulars (Record, Doc. 35). The plaintiffs sought identification of the date or incident when they were alleged to have charged unauthorized rates or operated beyond their territory. They also sought an explanation of the manner in which their records were claimed not to have "sufficient detail" and a definition of "readily available for examination." Id.
When the hearing convened for the second day, on December 14, 1993, the hearing officer noted receipt of the request for a bill of particulars. The hearing officer stated that he had not answered the request for a bill of particulars in writing (Record, Doc. 48, p. 8-9) but that he would "do that on the record as well as clarify other points that were raised and other allegations that were raised by Mr. Colucci [the DOT's investigator] separate and aside from what has been asked for in the bill of particulars." (Record, Doc. 48, p. 9). The hearing officer indicated that if any allegations were made that were not within the investigation of the DOT, counsel for the plaintiffs could object. Plaintiff's counsel responded, "Fine," and the hearing proceeded with no further objection with regard to a written bill of particulars (Record, Doc. 48, p. 10-11).
The plaintiffs now claim in their brief, at page 25, that the oral response to the request for a bill of particulars was vague and unspecific. It appears, however, that at the hearing the plaintiffs agreed that the written notification and the verbal response to the request for more detail were sufficient. They do not claim, and the record does not reveal, that they were unaware of the conduct claimed to constitute violations or that they were CT Page 5204-EE unable to present a defense because of lack of specificity of the charges. The plaintiffs have not established their claims of lack of adequate notice.
The court does not find that the plaintiffs have established either of their claims of procedural irregularities.
LEGAL ISSUES
4. Violation Based on Delay in Supplying Information
The penalties imposed by the DOT are based in part on its finding that the plaintiffs failed to comply with RCSA §16-319-7, which requires regulated taxi and livery providers to make their records "readily available for examination by the commission or its authorized representative." The records subject to the requirements of this regulation are not limited to those identified in § 16-319-8. Rather, § 16-319-7 provides that "[a]ll books, records, vouchers, memoranda and other papers relating to the business of the certificate holder shall be readily available for examination by the commission or its authorized representative."
The DOT concluded that "readily available" required compliance within three days and found that the Yellow Cab plaintiff had violated § 16-319-7 because the records requested were not made available within fifteen days after the June 23, 1993 request. (Record, Doc. 3, p. 10). The DOT concluded that Curtin Motor Livery violated RCSA § 16-325-5 by failing to make its records available within "the industry standard" of three days. (Record, Doc. 3, p. 13).
The DOT found that the respondents took almost two weeks to provide a DOT investigator with specified records, and that compliance was incomplete. (Record, Doc. 3, p. 4).
The regulations at issue contain no time limit for compliance, nor do they define "readily available."
The DOT interprets its regulation in accordance with the dictionary meaning of the word "readily:" "promptly, willingly, easily." American Heritage Dictionary, 2d College Ed. 1985 and asserts that an interpretation of "readily" as meaning "within three days" is reasonable in view of the duty of the DOT to respond promptly to complaints. (Record, Doc. 3, p. 4). CT Page 5204-FF
Other dictionary definitions of the word "readily" confirm the DOT's emphasis that the term's meaning encompasses prompt compliance without delay. In Webster's New Third International Dictionary, 15th ed. (1971), "readily" is defined as "in a ready manner, with readiness, with prompt willingness; without hesitating, quibbling or delaying, with alacrity; with fairly quick efficiency; without needless loss of time; reasonably fast, speedily; with a fair degree of ease; without much difficulty; with facility, easily." The Oxford English Dictionary, Oxford University Press (1970) defines "readily" as follows: "1. Promptly, in respect of the voluntariness of the action, hence with alacrity or willingness; willingly, cheerfully. 2. Promptly, in respect to the time of the action; quickly without delay; also without difficulty; with ease or facility."
Where an agency's interpretation of the regulations or statute it is charged with enforcing is reasonable and plausible, it should be given deference by the courts. Bridgeport Hospitalv. Commission on Human Rights and Opportunities, 232 Conn. 91,110 (1995).
As a regulatory agency, the DOT must respond quickly to reports of violations, in order to deter misconduct, protect the rights of competitors, and preserve confidence that the regulatory process can respond adequately to avoid temptations to engage in self-help. Where a regulated entity's own documentation of its activities is a major part of the evidence, the DOT has an interest in prompt access to avoid the loss or alteration of evidence.
The DOT found that the plaintiffs responded to the request for records slowly, incompletely, in piecemeal fashion and from locations other than the identified company headquarters. (Record, Doc. 3, p. 4). This court finds that the DOT reasonably construed its regulation and reasonably found that the plaintiffs had not made their records "readily available" within a reasonable interpretation by the DOT of its own regulations.
3. Requirements for Content of Record-keeping
The plaintiffs further claim that they were found to have violated record-keeping requirements that are not contained in any DOT regulation but only in memoranda that do not have the force of law and cannot be the basis for an imposition of CT Page 5204-GG penalties. The Regulations of Connecticut State Agencies §16-319-8 and § 16-325-5 govern the sufficiency of detail required of taxicab and livery vehicle records, respectively. While the DOT concedes that those regulations do not enumerate each of the records to be maintained, the DOT introduced into evidence at the administrative hearing a notice to "All Taxicab Certificate Holders" dated May 18, 1988, informing them that the DOT interprets § 16-319-8 (Records) of the Regulations to mean, among other things, that all taxicab certificate holders are required to maintain permanent written records of every taxi trip they perform and that such "trip records" shall include at least the following information:
 "1. The first and last names and public service operator license number of the driver.
 2. The taxi registration plate number and the last six characters (letter and numbers) of the vehicle identification number.
 5. The address of trip origin and trip destination including street name and number (or name of nearest cross street) for each trip.
 6. The number of passengers transported and the fare charged for each trip. "
(Record, Doc. 27, p. 1).
In this memorandum the DOT advised certificate holders that failure to meet the announced record-keeping requirements "may be considered grounds for revocation of part or all of said certificate."
The DOT also introduced into evidence (Record, Doc. 27, p. 2) a memorandum issued on July 19, 1984 to "All Sedan Livery Operators" by the DOT concerning record-keeping requirements for sedan livery operators. In the memorandum, the DOT notified operators that it required them to record the following information for all trips performed:
"1. Dates of service.
2. Address of point of trip origin.
3. Address of point of trip termination. CT Page 5204-HH
 4. The separate charge for each of these categories, if charged for:
a. Waiting time.
 b. In town travel, if patron orders stops at various points within a given town, including vehicle odometer readings.
 c. Any other charges assessed [sic] which are published in your tariff.
 5. Total travel mileage and charges.
6. Total travel and other charges assessed for the trip. "
While the DOT may well have sent its memos concerning record-keeping to the plaintiffs, it did not enact any regulations actually incorporating the requirements stated in those regulations.
The DOT argues that even though the record-keeping requirements that it has penalized the plaintiffs for violating are not set forth in any statute or duly enacted administrative regulation, the requirements should be held to be enforceable as agency interpretations of those regulations that impose obligations to keep records, namely, Regulation §§ 16-319-8
and 16-325-5.
Regulation § 16-319-8, which concerns taxicab operators, provides as follows:
 Certificate holders that are not required to maintain their records in conformity with the commission's uniform system of accounting shall maintain their accounts in sufficient detail to readily furnish to the commission reports of their financial condition and the result of their operations.
Regulation § 16-325-5, which concerns livery service operators, provides as follows:
 Permit holders shall maintain their records in sufficient detail to readily furnish to the authority, upon request, reports of their financial condition and the results of their operations. All books, records, vouchers, memoranda CT Page 5204-II and other papers relating to the business of the permit holder shall be maintained and available for examination by the authority for a minimum of two years.
On their face, neither of these regulations relates to record-keeping other than financial and accounting information to allow a determination of an operator's "financial condition" and neither requires operators to record particular details of their activities. The term "results of their operations", interpreted in accordance with usual principles of statutory construction, see Smith v. Zoning Board, 227 Conn. 71, 89 (1993), is not fairly read as imposing requirements to keep detailed information as to each trip completed by each driver, since the details of trips, while part of the operation itself, do not constitute a record of the "results" of that operation according to the ordinary meaning of words.
The DOT, like other administrative agencies, may issue enforceable regulations only by complying with those sections of the Uniform Administrative Procedure Act that apply to the enactment of such regulations, pursuant to General Statutes §4-168 (a).[1]
The DOT does not claim, as in Maloney v. Pac, 183 Conn. 313
(1981) that the requirements at issue are not regulations within the meaning of UAPA. Rather, the DOT claims for each requirement set forth in the memoranda the force and enforceability of an agency regulation and has subjected the plaintiffs to sanctions in part for failing to comply with their terms.
The Connecticut Supreme Court has held that "[w]here a rule has a substantial impact on the rights and obligations of parties who may appear before the agency in the future, it is a substantial rule, i.e., a `regulation' requiring compliance with the UAPA. Salmon Brook Convalescent Home v. Commission onHospitals Health Care, 177 Conn. 356, 362 (1979). See Texaco,Inc. v. Federal Power Commission, 412 F.2d 740, 744 (3d Cir. 1969); Lewis-Mota v. Secretary of Labor, 469 F.2d 478, 481-82 (2d Cir. 1972).
Here, as in Salmon Brook, the agency penalized the plaintiffs for failing to comply with standards that are not set forth in any properly promulgated regulation. Use of such standards has thus determined the rights and obligations of the plaintiffs and will have a substantial impact on the obligations of those who CT Page 5204-JJ may appear before the DOT in the future. The notice of the record-keeping requirements and the DOT's use of them as a basis for imposing penalties required that the requirements be enacted as regulations in compliance with the rule-making procedures required by the UAPA, which include opportunities for notice to and comments by regulated companies and others.
An agency may not, by referring to their content as "guidelines," convert requirements not duly enacted into enforceable administrative regulations. Salmon Brook, 177 Conn. 365. Regulated companies plainly were not afforded an opportunity to comment on the contents of the memoranda which the DOT seeks to enforce, but only the texts of §§ 16-319-8 and 16-325-5, which are set forth above and which do not contain the requirements the DOT seeks to enforce.
It may well be that the DOT must require detailed record-keeping of the daily services performed by taxicabs and livery operators in order to be able to enforce effectively limitations on charges and territories in which the carriers operate. The need for such requirements does not, however, give the DOT authority to impose and enforce standards that have not been duly enacted as regulations in conformity with the requirements of the UAPA.
SUBSTANTIVE ISSUES
In addition to the claims of procedural and legal error discussed above, the plaintiffs claim that the DOT acted arbitrarily, capriciously and contrary to legal authority in concluding that they had operated in territories beyond the authority of their certificates and beyond the limitation of the contracts which they claimed allowed some of the trips at issue. Plaintiff Curtin Motor Livery claims that the DOT erred in finding that it had failed to charge the tariffs authorized for its livery functions for trips that constituted livery service.
With regard to these claims, this court may not try the charges de novo or substitute its weighing of the evidence for that of the administrative agency. Stankiewicz v. Zoning Board ofAppeals, 15 Conn. App. 729, 731-22 (1988), aff'd, 211 Conn. 76
(1989); Conetta v. Zoning Board of Appeals, 42 Conn. App. 133,138 (1996).
With regard to the charges against Curtin Motor Livery, the CT Page 5204-KK DOT was presented with evidence of this plaintiff's authorized tariff (Record, Doc. 14) and that this plaintiff had completed at least ten trips that were not charged at the authorized livery tariff. A DOT investigator presented documentary evidence including for each complaint received the documents supporting his conclusion that the trip at issue was charged in an amount that was not correct under the tariff. (Record, Doc. 49, pp. 40-55, 64, 87, 89, 103; Record, Doc. 49, 133, 48).
With regard to the charges that the two Yellow Cab companies operated outside their authorized areas, the DOT acted on the basis of the investigation of complaints of this activity by other taxi operators. The investigator presented evidence that both plaintiffs had initiated trips to the airport from areas outside their authorized territories and had picked up passengers at areas of the airport other than the queue line and transported them to locations not in the plaintiffs' authorized territories. (Record, Doc. 49, p. 69-73.)
The DOT was also presented with evidence that some of the plaintiffs' vehicles had dual livery/taxi certificates and concluded that for some trips performed outside the authorized territory, at taxi rates, the trips were not for livery service but for taxi service outside authorized areas (Record, Doc. 48 p. 87-91, 100-104).
The Yellow Cab plaintiffs claim that the DOT erred in finding that some trips from the airport were out-of-territory because they were parties to a contract with the DOT that they claimed authorized such trips. The plaintiffs did not introduce the contract into evidence, and a witness who identified himself as a public concessions supervisor at Bradley International Airport, William C. Jordan, testified that this agreement allowed the Yellow Cab plaintiffs to pick up only from the queue line at the airport and not from other areas of Bradley Field, such as the Sheraton Hotel at the airport. (Record, Doc. 48, pp. 151-52). Substantial evidence therefore supports the DOT's finding that the plaintiffs did not have a source of authorization other than their certificates that permitted the trips from locations other than the queue line at the airport to towns not in the taxicabs' authorized territories.
The plaintiffs claim that the out-of-territory trips were livery trips, not taxi trips, however the DOT's findings to the contrary are supported by evidence that taxi fares were charged CT Page 5204-LL and that the circumstances surrounding the origination of these trips indicated that they were taxi trips, not livery trips. (Record, Doc. 48, p. 42-43).
The court finds that the findings of the DOT that the plaintiffs had operated outside their authorized territories and beyond the scope of any contractual authorization and that they had failed to charge livery rates for trips claimed to be livery trips are supported by substantial evidence.
CONCLUSION
The DOT has acted arbitrarily and illegally only in imposing penalties for violation of record-keeping requirements not set forth in duly enacted regulations. Since the penalties imposed on the plaintiffs are based on findings of multiple violations, without any part of the penalties being discretely allocated to the finding of violation of record-keeping requirements, this court cannot determine the extent to which the penalties imposed arise from this invalid action rather than from other violations that this court finds to have been supported by substantial evidence.
Accordingly, the court sustains the appeal only with regard to the imposition of penalties based on failure to keep detailed trip records and remands to the administrative agency for a determination of the penalties appropriated for only those violations that have been found to be supported by substantial evidence.
Beverly J. Hodgson Judge of the Superior Court